**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TREVOR LUTGE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TIMEX.COM, INC.,<br><br>Defendant. | Case No. 3:26-cv-00960-EMC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER OR DISMISS**<br><br>Date: June 25, 2026<br>Time: 1:30 p.m.<br>Judge: Hon. Edward M. Chen<br>Location: Courtroom 5, 17th Floor |

**TABLE OF CONTENTS**

**PAGE(S)**


INTRODUCTION .......... 1

LEGAL STANDARD .......... 2

ARGUMENT .......... 4

I. CALIFORNIA LAW GOVERNS WHETHER A VALID AGREEMENT EXISTS .......... 4

II. PLAINTIFF DID NOT ASSENT TO THE TERMS OR PRIVACY POLICY .......... 5

III. THE INTERESTS OF JUSTICE AND CONVENIENCE DISFAVOR TRANSFER .......... 9

IV. THE CCPA DOES NOT INSULATE DEFENDANT FROM LIABILITY UNDER CIPA .......... 10

V. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 631 .......... 11

A. Plaintiff Alleges Klaviyo Violates The Second Prong Of Section 631 .......... 11

B. Plaintiff Alleges The Contents Of His Communications Were Intercepted .......... 13

C. Plaintiff Alleges The Communications Were Intercepted "In Transit" .......... 15

VI. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 632 .......... 16

VII. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 638.51 .......... 17

A. CIPA Section 638.51 Is Not Limited To Telephones .......... 17

B. Cookies Are Pen Registers .......... 18

C. Plaintiff Has Statutory Standing .......... 19

VIII. PLAINTIFF STATES A CLAIM UNDER THE ECPA .......... 20

A. Defendant Intercepted and Disclosed The "Contents" Of Plaintiff's Communications .......... 20

B. Defendant's Conduct Falls Squarely Within The Crime-Tort Exception .......... 20

IX. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY .......... 22

CONCLUSION .......... 24

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
666 F. Supp. 2d 1109 (C.D. Cal. 2009) ........ 3

*Ambriz v. Google*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) ........ 12, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2, 3

*Berlinger v. Viagogo Ent., Inc.*,
2026 WL 203538 (S.D.N.Y. Jan. 27, 2026) ........ 5

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 5, 6, 7, 8

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 14, 20

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 21

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 15, 17

*Byars v. Goodyear Tire and Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ........ 16

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 16

*Casillas v. Six Flags Ent. Corp.*,
812 F. Supp. 3d 1016 (C.D. Cal. 2025) ........ passim

*Cavanaugh v. Fanatics, LLC*,
738 F. Supp. 3d 1285 (E.D. Cal. 2024) ........ 7

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ........ 6, 7, 8

*Conohan v. Rad Power Bikes Inc.*,
2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) ........ 18

*Cooper v. Mount Sinai Health Systems, Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y., 2024) ........ 22

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 12

*Cruz v. Tapestry, Inc.*,
113 Cal. App. 5th 943 (2025) .......... 7

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .......... 19

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) .......... 3, 9

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 11

*Doe v. Eating Recovery Ctr. LLC*,
2024 WL 2852210 (N.D. Cal. June 4, 2024) .......... 11

*Doe v. Epic Games, Inc.*,
2020 WL 376573 (N.D. Cal. Jan. 23, 2020) .......... 9

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 23

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 15

*Doe v. Talkiatry Mgmt. Servs., LLC*,
816 F. Supp. 3d 1206 (C.D. Cal. 2026) .......... 19

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 15, 20

*Dougherty v. Zynga Inc.*,
2026 WL 880150 (N.D. Cal. Mar. 31, 2026) .......... 5

*Eiess v. USAA Fed. Sav. Bank*,
404 F. Supp. 3d 1240 (N.D. Cal. 2019) .......... 4

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 15

*Flanagan v. Flanagan*,
41 P. 3d 575 (Cal. 2002) .......... 17

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) .......... 2, 14, 18, 19

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 2, 12, 13, 20

*Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. Apr. 1, 2026) ........ 24

*Georgia v. Public.Resource.Org, Inc.*,
590 U.S. 255 (2020) ........ 13

*Gianne v. Accor Mgmt. US Inc.*,
2026 WL 925522 (C.D. Cal. Mar. 31, 2026) ........ 16

*Gill v. Chipotle Mexican Grill, Inc.*,
2025 WL 287320 (C.D. Cal. Jan. 23, 2025) ........ 7

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ........ 5, 8

*Goldstein v. Rumble Inc.*,
2025 WL 3691987 (C.D. Cal. Nov. 6, 2025) ........ 13

*Harris v. iHeartMedia, Inc.*,
2026 WL 247875 (N.D. Cal. Jan. 29, 2026) ........ 18

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ........ 23

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ........ 23

*Humphrey v. J.M. Smucker Company*,
2023 WL 3592093 (N.D. Cal. May 22, 2023) ........ 3

*Imran v. Vital Pharms., Inc.*,
2019 WL 1509180 (N.D. Cal. Apr. 5, 2019) ........ 9

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 2, 14, 22

*In re Ferrero Litig.*,
768 F. Supp. 2d 1074 (S.D. Cal. 2011) ........ 2, 9

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ........ 24

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 20

*In re Meta Pixel Tax Filing Cases*,
724 F.Supp.3d 987 (N.D. Cal. 2024) ........ 15

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 19

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) .......... 23

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) .......... 18

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) .......... 16

*Lopez v. Dave Inc.*,
2023 WL 8594393 (9th Cir. Dec. 12, 2023) .......... 6

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 3

*Lou v. Belzberg*,
834 F.2d 730 (9th Cir. 1987) .......... 9

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) .......... 21, 22

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .......... 13, 15

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) .......... 5

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......... 18

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 2, 4, 6

*Ortiz v. Foris Dax, Inc.*,
2026 WL 1430720 (N.D. Cal. May 21, 2026) .......... 18

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .......... 8

*Pitzer Coll. v. Indian Harbor Ins. Co.*,
8 Cal. 5th 93, 447 P.3d 669 (2019) .......... 4

*Ponomarenko v. Shapiro*,
287 F. Supp. 3d 816 (N.D. Cal. 2018) .......... 2, 3, 9

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 23

*Quamina v. JustAnswer LLC*,
721 F. Supp. 3d 1026 (N.D. Cal. 2024) .......... 7

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 14, 22

*R.S. v. Prime Healthcare Services, Inc.*,
2025 WL 103488 (C.D. Cal. 2025) .......... 22

*Ramirez v. Trusper, Inc.*,
2024 WL 4479862 (N.D. Cal. Oct. 11, 2024) .......... 7

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 19

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. July 18, 2025) .......... 18, 21, 22

*Rocha v. Urb. Outfitters, Inc.*,
2024 WL 393486 (N.D. Cal. Feb. 1, 2024) .......... 7

*Rubio v. Monsanto Co.*,
181 F. Supp. 3d 746 (C.D. Cal. 2016) .......... 10

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 13

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
666 F. Supp. 3d 1089 (C.D. Cal. 2023) .......... 7

*Shah v. Capital One Fin. Corp.*,
768 F.Supp.3d 1033 (N.D. Cal. 2025) .......... 21

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 11

*Smith v. Rack Room Shoes, Inc.*,
("*Smith I*"), 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 2, 15, 16, 17

*Smith v. Rack Room Shoes, Inc.*,
("*Smith II*"), 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... 2, 21, 22

*Smith v. Rack Room Shoes, Inc.*,
*(*"*Smith III*"), 2026 WL 183852 (N.D. Cal. Jan. 23, 2026) .......... 2

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 7

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) .......... 2

*St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ..... 15, 16

*STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551 (N.D. Cal. 1988) ..... 3

*Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200 (9th Cir. 1999) ..... 20

*Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949 (E.D. Cal. 2025) ..... 12

*Tejon v. Zeus Networks, LLC*, 2026 WL 1194722 (11th Cir. May 1, 2026) ..... 5

*Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120 (9th Cir. 2008) ..... 4

*Vaccaro v. Altais*, 2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) ..... 16

*Vera v. O'Keefe*, 791 F. Supp. 2d 959 (S.D. Cal. 2011) ..... 16

*Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) ..... 11

*Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945 (N.D. Cal. 2024) ..... 13

*Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ..... 13, 14

*Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880 (S.D. Cal. 2025) ..... 13, 18

**STATUTES**

18 U.S.C. § 2511(2)(d) ..... 20

28 U.S.C. § 1404(a) ..... 3

Cal. Civ. Code § 1798.120 ..... 10

Cal. Civ. Code § 1798.175 ..... 10, 11

Cal. Const. Art. I, § 1 ..... 4

Cal. Pen. Code § 31 ..... 16

Cal. Pen. Code § 630 .......... 5, 10, 11

Cal. Pen. Code §§ 631 .......... 10, 11, 13

Cal. Pen. Code § 631(a) .......... 12

Cal. Pen. Code § 632 .......... 10, 11, 13

Cal. Pen. Code § 637.2 .......... 19

Cal. Pen. Code §§ 637.2(a), (c) .......... 19

Cal. Pen. Code § 638.50(b) .......... 18

Cal. Pen. Code § 638.51 .......... passim

Cal. Pen. Code § 638.51(a) .......... 19

**RULES**

Fed. R. Civ. P. 8 .......... 15

**INTRODUCTION**

Plaintiff Trevor Lutge ("Plaintiff"), individually and on behalf of all others similarly situated, seeks to represent a putative class of individuals who, like him, utilized Defendant Timex.com, Inc.'s ("Defendant") website, www.timex.com (the "Website") to search for and purchase watches and timepieces and had their communications intercepted and disclosed to Klaviyo Inc. ("Klaviyo") without their knowledge or consent. Complaint (ECF No. 1) ("Compl.").

Defendant is a designer, manufacturer and retailer of timepieces and watches. Compl. ¶ 2. When a user accesses the Website, Defendant presents them with a cookie banner that gives a user the opportunity to accept, reject, or limit tracking cookies. Compl. ¶¶ 15–23, Figs. 1–3. Defendant represents, regardless of the choice made by consumers, that any tracking of their activity on the Website will be done anonymously. *Id*. However, the choices presented by Defendant are illusory. Defendant tracks consumers' online activity in an identifiable way despite its explicit representations not to do so.[1] Even if a user rejected cookies, Defendant still intercepted the user's private communications through the Klaviyo tracking codes and simultaneously disclosed this information to Klaviyo. Compl. ¶ 14–23, 77–94. Such disclosures were not made to provide Plaintiff with services, but rather to enrich Defendant through targeted advertising. Compl. ¶¶ 3, 7, 92, 127. Such conduct is unlawful under both state and federal law. *Id.* at ¶¶ 113–179.

When Defendant illegally intercepted and disclosed users' communications to Klaviyo in violation of the ECPA, CIPA, and the California Constitution, it allowed Klaviyo to collect and use this private information, thus depriving users of their right to control it. Compl. ¶¶ 1–7, 14–23. Defendant's conduct was not an accident. Instead, Defendant deliberately employed the Klaviyo tracking technologies to bolster its advertising revenue by allowing it to harvest information, build robust consumer profiles, and enable advertisers like Defendant to better target users for advertising

[1] Defendant's suggestion that the tracking technologies "apparently make . . . hundreds of thousands of businesses criminal wiretappers" (Mot. at 4) misapprehends Plaintiff's allegations by disregarding its own representation that the tracking technologies only collect anonymized information. Compl. ¶¶ 14–23, Fig. 3.

purposes. *See* Compl. ¶¶ 9–10, 14–23, 51–76. The Ninth Circuit recognized the harm caused by this conduct. *See generally In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020).

Rather than cure its privacy violations, Defendant attempts to hide behind representations made in unenforceable internet contracts it never presented to consumers, and moves to transfer or dismiss Plaintiff's claims accordingly. *See generally* Defendant's Motion to Transfer or Dismiss (ECF No. 21) ("Mot"). However, the majority of Defendant's arguments have been squarely rejected by a number of courts in this District. *Smith v. Rack Room Shoes, Inc.* ("*Smith I*"), 2025 WL 1085169, at *3–5 (N.D. Cal. Apr. 4, 2025) (CIPA §§ 631–32); *Smith v. Rack Room Shoes, Inc.* ("*Smith II*"), 2025 WL 2210002, at *4–5 (N.D. Cal. Aug. 4, 2025) (ECPA); *Smith v. Rack Room Shoes, Inc.* ("*Smith III*"), 2026 WL 183852 (N.D. Cal. Jan. 23, 2026) (ECPA, CIPA § 631 (use)); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 870–72 (N.D. Cal. 2025) (CIPA §§ 631, 638.51); *Casillas v. Six Flags Ent. Corp*., 812 F. Supp. 3d 1016, 1028–33 (C.D. Cal. 2025) (ECPA, CIPA §§ 631, 638.51); *Gabrielli v. Motorola Mobility LLC,* 2025 WL 1939957, at *10–12 (N.D. Cal. July 14, 2025) (CIPA §§ 631, 638.51); *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 834 (N.D. Cal. 2018) (where there's no valid forum selection clause "the burden of showing why transfer is warranted remains with the defendant, and the Court must evaluate the motion to change venue under the normal § 1404(a) framework"); *In re Ferrero Litig.*, 768 F. Supp 2d 1074, 1081 (S.D. Cal. 2011) (a "California district court is more familiar with California law than district courts in other states"); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ("whether the choice of law provision applies depends on whether the parties agreed to be bound by [the terms]"). This Court should do the same.

## LEGAL STANDARD

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at

960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id*. (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

In a motion to transfer, the "burden is on the moving party to establish that a transfer will allow a case to proceed more conveniently and better serve the interests of justice." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009); *see also STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1555 (N.D. Cal. 1988) ("In seeking to transfer a case to a different district, a defendant bears a heavy burden of proof to justify the necessity of the transfer."). First, the defendant must establish that the matter "might have been brought" in the district to which transfer is sought. 28 U.S.C. § 1404(a). Second, the Court must balance three factors: (1) convenience of the parties; (2) convenience of the witnesses; and (3) interests of justice. *See* 28 U.S.C. § 1404(a). Importantly, a transfer should decrease the overall inconvenience of the case rather than simply shift the inconvenience from one party to another. *Decker Coal Co.*, 805 F.2d at 843 (affirming the denial of a motion to transfer where transfer would "merely shift rather than eliminate the inconvenience").

"[W]hen an agreement contains a valid forum selection clause it is the plaintiff's burden to show either that the forum selection clause is not valid, or that the public interest factors to be considered under § 1404(a) make transfer inappropriate. However, where the forum selection clause does not cover the parties' dispute, the burden of showing why transfer is warranted remains with the defendant, and the Court must evaluate the motion to change venue under the normal § 1404(a) framework." *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 834 (N.D. Cal. 2018).

## ARGUMENT

### I. CALIFORNIA LAW GOVERNS WHETHER A VALID AGREEMENT EXISTS

Defendant, presuming the existence of an agreement argues "the Court should apply Connecticut contract law." Mot. at 8. That is wrong, as Defendant's position presupposes the existence of a valid agreement. This Court should only conduct a choice-of-law analysis if it determines an enforceable agreement exists. *Nguyen*, 763 F.3d at 1175 ("whether the choice of law provision applies depends on whether the parties agreed to be bound by Barnes & Noble's Terms of Use in the first place."). As discussed *infra*-Section II, no agreement was formed between the Parties.

Assuming, *arguendo,* the terms are enforceable, California law should apply. Under Section 187 of the Restatement Second of Conflict of Laws when determining the enforceability of contractual choice of law provision, the court must first determine: (1) whether the chosen state has a substantial relationship with the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. *Pitzer Coll. v. Indian Harbor Ins. Co.*, 8 Cal. 5th 93, 100, 447 P.3d 669, 673 (2019). If either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California.

Here, if a valid agreement exists, California law applies to Plaintiff's claims because California has a greater interest in the dispute. Indeed, Plaintiff brings the majority of his claims under California law, on behalf of the California Subclass. Compl. ¶¶ 103 (California subclass), 133–179 (California claims). Further, it would violate California public policy to enforce the contract's choice of law clause to salvage what would otherwise be an unenforceable agreement under California law. *Nguyen*, 763 F.3d at 1175 ("whether the choice of law provision applies depends on whether the parties agreed to be bound by Barnes & Noble's Terms of Use in the first place."); *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1249 n.5 (N.D. Cal. 2019) ("The Court cannot apply the choice-of-law provision in the Deposit Agreement because that presupposes that a contract has been formed in the first place.") (citing *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008)). Moreover, applying Connecticut law would moot California's fundamental interest in protecting individual privacy. Cal. Const. Art. 1, § 1

(individual's inalienable rights include the right to privacy); Cal. Penal Code § 630 ("The Legislature by this chapter intends to protect the right of privacy of the people of this state").

Even if Connecticut law were to apply to whether an agreement exists (it does not), internet contract principles are substantially the same irrespective of the forum. *Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025) ("we have consistently stated that no differences exist in the law of the different states as to internet contract formation.") (collecting cases); *Tejon v. Zeus Networks, LLC*, 2026 WL 1194722 (11th Cir. May 1, 2026) (adopting *Berman*); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017); *Dougherty v. Zynga Inc.*, 2026 WL 880150, at *3 (N.D. Cal. Mar. 31, 2026) (same); *Berlinger v. Viagogo Ent., Inc.*, 2026 WL 203538, at *4 (S.D.N.Y. Jan. 27, 2026); *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (same).

## II. PLAINTIFF DID NOT ASSENT TO THE TERMS OR PRIVACY POLICY

Defendant argues Plaintiff "assented to the forum-selection clause in Timex's Terms." Mot. at 8–9. That is wrong, as Plaintiff did not agree to the purported Terms and Privacy Policy.

"Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856. Defendant's inquiry-notice theory fails as discussed *infra*.

As a preliminary matter, the second pop-up screen (*see* Mot. at 3) is easily dismissed as the text disclosure is not about the Terms of Use or Privacy Policy at all. *Id.* Every operative sentence of the disclosure is addressed to one subject: consent to receive marketing ***text messages***. The user is told they are consenting to receive SMS — not consenting to the Terms of Use, the Privacy Policy, or any other legal terms. Crucially, there is no call to action such that there is no way to unambiguously manifest assent. *Id.* Thus, the relevant question this Court must address is whether the first pop-up screen put Plaintiff satisfies the two-part test for inquiry notice—it does not.

***First***, the promotional pop-up did not provide reasonably conspicuous notice of the purported Terms and Privacy Policy. "Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Berman*, 30 F.4th at 857. "[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers." *Nguyen*, 763 F.3d at 1179.

The image of the pop-ups Defendant submits with its own motion confirms the disclosure was anything but conspicuous. McAuslan Decl. ¶ 5, 7 (depicting the pop-up screens); Mot. at 2–3. The screen is dominated by an oversized photograph of a wristwatch and the bold marketing headline, "Enjoy 15% off your first purchase." *Id.* The visual focus is a large black "Continue" button, set apart in heavy weight and tied to the prompts for "Email Address" and "Birthday (Optional)." *Id.* Beneath that button, in markedly smaller text a user needs to squint to see, runs the purported disclosure: "By signing up you are agreeing to the Privacy Policy and Terms & Condition." *Id.* The hyperlinks are underlined but not color-contrasted, and tellingly, the purported policies are the smallest text on the screen. There is no checkbox, no scrollable box showing the terms, and no separate "I agree" action is required to advance.

This is precisely the kind of "fine print" the Ninth Circuit found insufficient in *Berman*. 30 F.4th 849, 857. Defendant intentionally minimized the disclosure by placing it on a screen optimized to capture an email in exchange for a 15% discount. A reasonable user's attention is understandably directed at the discount, the email field, and the prominent black button — not at the miniscule text tucked beneath the button outside of the natural user flow. *Berman*, 30 F.4th at 856–58; *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1156–58 (9th Cir. 2025) (rejecting inquiry notice where "the notice seems to fade into the irrelevancy of other aspects of the page."). Further, simply underscoring the purported policies is insufficient to alert a reasonably prudent user that a clickable link exists. *Berma*n, 30 F.4th at 857 ("A web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently "set apart" from the surrounding text."); *Lopez v. Dave Inc.*, 2023 WL 8594393, at *1 (9th Cir. Dec. 12, 2023) ("although the term 'TOS' is underlined, this alone is 'insufficient to alert a reasonably prudent internet user that a clickable link exists.'");

*Serrano v. Open Rd. Delivery Holdings, Inc.,* 666 F. Supp. 3d 1089, 1096 (C.D. Cal. 2023) ("the failure to identify the hyperlink to Defendant's Terms of Use by more than mere underlining is highly significant"); *Quamina v. JustAnswer LLC*, 721 F. Supp. 3d 1026, 1039 (N.D. Cal. 2024) ("the hyperlinked terms were only underlined and not otherwise sufficiently set apart from the rest of the text notice."); *Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285, 1296 (E.D. Cal. 2024) ("the Court will not depart from the overall trend that finds hyperlinks must be offset in a more obvious way than the underlining"); *Rocha v. Urb. Outfitters, Inc.*, 2024 WL 393486, at *4 (N.D. Cal. Feb. 1, 2024) (same); *Ramirez v. Trusper, Inc.*, 2024 WL 4479862, at *5 (N.D. Cal. Oct. 11, 2024) (finding terms were insufficiently conspicuous because "the words 'terms page' [were] merely underlined with no other distinguishing design or capitalization."); *Gill v. Chipotle Mexican Grill, Inc.*, 2025 WL 287320, at *4 (C.D. Cal. Jan. 23, 2025) ("the hyperlinks are merely underlined (on the website) or bolded (in the app) . . . . But '[n]umerous cases have found mere underlining of a hyperlink to be insufficient.'"). And "even close proximity to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 941 (N.D. Cal. 2024).

Comparative size also weights against notice. In *Cruz v. Tapestry, Inc.*, the court found notice text "approximately half the size of the action button's white text" insufficient. *Cruz v. Tapestry, Inc.*, 113 Cal. App. 5th 943, 958–59 (2025). The disclosure here suffers the same defect: the "Continue" button is large, black, and bolded; yet the disclosure beneath it is markedly smaller. *Cruz* also condemned defendants who use a "graphical interface to ensure a consumer supplies billing information, they have not done the same to alert a consumer to the Terms of Use." *Cruz*, 113 Cal. App. 5th at 959. Similarly, here Defendant used boxed input fields for the email address and birthday, demanding affirmative interaction, but presented the purported Terms and Privacy Policy as passive.

The promotional context further undermines Defendant's position because "when a user simply purchases goods or avails [himself] of a one-time discount offer, there is less reason for [him] to expect a continued relationship beyond the purchase. *Chabolla*, 129 F.4th at 1155; *Berman*, 30

F.4th at 867 (Baker, J., concurring) ("websites inviting one-off transactions will be held to higher standards than those proposing continuing associations").

***Second***, Plaintiff did not unambiguously manifest assent. "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857. "[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id.* at 858.

The disclosure here did the opposite. The text says "By ***signing up*** you are agreeing"—it does ***not*** say "by clicking ***Continue***." The action button on the screen is labeled "Continue," not "Sign Up." *Id.* This is the exact ambiguity the Ninth Circuit in *Chabolla* found too ambiguous to constitute a manifestation of assent. *Chabolla*, 129 F.4th at 1158 ("There is no 'sign up' button, and the only button . . . reads 'Continue'. . . . It is up to the user to assume that entering a first and last name and clicking the 'Continue' button amounts to 'signing up' . . . . [I]ndeed, the resulting ambiguity is dispositive."). The Ninth Circuit's 2025 decision in *Godun v. JustAnswer LLC* affirms this position. *Godun v. JustAnswer LLC*, 135 F.4th at 713 ("Under *Chabolla*, the text on an action button matters insofar as it matches an advisal's explanation.") Where, the advisal references one act ("signing up") but the action button requires a different act ("Continue"), the user cannot be deemed to have unambiguously assented to the legal terms.

*Patrick v. Running Warehouse* does not compel a different result, there the Ninth Circuit's reasoning turned on the high contrast text, directly below the ***purchase*** button. *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (finding there was "explicit notice on the final order review page, directly below key information such as the purchase total . . . [and] . . . [t]he notice is clear and legible, and the hyperlinked phrase 'terms of use' is colored bright green—contrasted against the surrounding white background and adjacent black text.") As discussed *supra*, the pop-up upon which Defendant relies is not reasonably conspicuous, nor does it require an unambiguous manifestation of assent.

Assuming, *arguendo*, Plaintiff did consent to the Privacy Policy (he did not), the scope of his purported consent does not cover the disclosures at issue. Defendant's own Privacy Policy references Klaviyo's use narrowly, in the context of consent to telephonic *c*ommunications, not the sweeping disclosure of his email, and detailed purchase information. Mot. at 5–6. Accordingly, Plaintiff did not consent to the Privacy Policy.

## III. THE INTERESTS OF JUSTICE AND CONVENIENCE DISFAVOR TRANSFER

As discussed *supra* Section II, no agreement exists, consequently, Defendant has the "the burden of showing why transfer is warranted remains with the defendant, and the Court must evaluate the motion to change venue under the normal § 1404(a) framework." *Ponomarenko v. Shapiro*, 287 F. Supp. 3d at 834.

Defendant fails to meet its heavy burden of demonstrating that both the interests of convenience and justice support transfer. Here, the interest of convenience favors Plaintiff, such that denial of Defendant's motion is proper. ***First***, the Court should give great weight to Plaintiff's choice of forum, as it is his home forum. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (A court may afford "great weight" to the plaintiff's choice of forum, especially "when the plaintiff has chosen to file the lawsuit in its home forum."). ***Second***, transfer to Connecticut does not serve the convenience of the parties and witnesses. Rather, "transfer would merely shift" the inconvenience to Plaintiff "rather than eliminate" it, especially since Plaintiff is willing to notice and take depositions near witnesses' residences, or remotely. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). ***Third***, "in the age of electronically stored information, the ease of access to evidence is neutral because much of the evidence in this case will be electronic documents, which are relatively easy to obtain in any district." *Doe v. Epic Games, Inc.*, 2020 WL 376573, at *9 (N.D. Cal. Jan. 23, 2020). ***Fourth***, a "California district court is more familiar with California law than district courts in other states." *In re Ferrero Litig.*, 768 F. Supp 2d at 1081 (S.D. Cal. 2011). ***Fifth***, this District "has a countervailing interest in protecting local residents from [Defendant's] practices" by enforcing California law, a factor weighing heavily against transfer. *Imran v. Vital Pharms., Inc.*, 2019 WL 1509180, at *6 (N.D. Cal. Apr. 5, 2019). ***Sixth***, "administrative considerations such as

docket congestion are given little weight in this circuit in assessing the propriety of a § 1404(a) transfer." *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 765 (C.D. Cal. 2016) As such, the relative congestion of this Court does not weigh towards transfer.

The overall balance of factors weighs heavily against transfer. Accordingly, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

## IV. THE CCPA DOES NOT INSULATE DEFENDANT FROM LIABILITY UNDER CIPA

Defendant's suggestion that the California Consumer Privacy Act insulates it from liability under CIPA misapprehends the law. Mot. at 11, 17, 18.

The two statutes are complementary, not conflicting. The CCPA gives consumers the right to opt out of permitted data sales and shares; CIPA criminalizes unauthorized interception, recording, and pen-register surveillance. Cal. Civ. Code § 1798.120; Cal. Penal Code §§ 631, 632, 638.51. Critically, the CCPA expressly provides "in the event of a conflict between other laws and the provisions of this title, ***the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control***." Cal. Civ. Code § 1798.175. Defendant's argument subverts this requirement by impermissibly asking the Court to hold that the statute granting consumers a right to opt out simultaneously authorizes companies to ignore liability under CIPA, undermining the protections CIPA provides for individual's privacy. Cal. Penal Code § 630 ("The Legislature hereby declares . . . the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society. The Legislature by this chapter intends to protect the right of privacy of the people of this state."). Defendant further misapprehends Plaintiff's allegations in Complaint by disregarding his allegations that Defendant tracks consumers' activity on the Website and connects such interactions to his identity despite clear promises not to, this is not replacing "the CCPA's opt-out regime with an opt-in regime requiring consent *before* data sharing" that Defendant suggests. *Compare* Mot. at 5; *with* Compl. 14–23.

*Doe v. Eating Recovery Center*, the principal case upon which Defendant relies, did not hold the CCPA displaces CIPA; it observed in dictum on summary judgment that the Legislature may

want to revisit CIPA—a far cry from the categorical holding of preemption Defendant urges this Court to adopt. *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025). Critically, at the motion to dismiss stage, the same court ***sustained*** the CIPA claims. *See Doe v. Eating Recovery Ctr. LLC*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024). When the California Legislature wants to repeal a statute, it knows how to say so expressly, until then, CIPA, which provides the greater privacy protections controls. *Compare* Cal. Civ. Code § 1798.175; *with* Cal. Penal Code § 630; *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930 (N.D. Cal. 2024) ("Giving effect to CIPA's broad statutory language is consistent with the California Legislature's stated intent to protect privacy interests, as well as the California courts' approach when applying statutes to new technologies").

## V. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 631

### A. Plaintiff Alleges Klaviyo Violates The Second Prong Of Section 631

Defendant argues Plaintiff "fails to plausibly allege that Klaviyo acted as a third-party eavesdropper as opposed to a service provider functioning as an extension of Timex." Mot. at 12. That is wrong.

Plaintiff's Complaint alleges that "Defendant aided, agreed with, and conspired with Klaviyo to track and intercept Plaintiff's and Class Members' internet communications while accessing the Website." *See, e.g.*, Compl. ¶ 139. The Complaint is replete with allegations that Plaintiff did not consent to Defendant sharing his personally identifiable information with non-party Klaviyo—nor could he, as Defendant's installation of the Klaviyo tracking technologies was unknown to him and Defendant expressly warranted any tracking was anonymous. Compl. ¶¶ 4–5, 7, 9–10, 14–23, 77–84. When read in conjunction with his allegations that Klaviyo uses this information for its own purposes (Compl. ¶¶ 10, 58–76, Figs. 4–7), Plaintiff's allegations paint a clear picture: Defendant aided non-party Klaviyo's interception of Plaintiff's communications without consent, such that Defendant is liable under the fourth prong of Section 631. Such allegations are routinely held to be sufficient at the motion to dismiss stage. *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972–73 (N.D. Cal. 2023) (a plaintiff may state a claim for aiding liability where the plaintiff alleges that the third-party software provider has the capability to use the intercepted communications for any

purpose other than providing them to the defendant); *Gabrielli v. Motorola Mobility, LLC*, 2025 WL 1939957 at *11 ("the Court rejects Motorola's passing contention that it cannot eavesdrop on its own communications because Gabrielli alleges that the cookies are collecting information on his private activity and information outside of Motorola's website—not his communications involving Motorola."); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025) ("[Plaitniff] has pled facts that would support a viable claim that Invoca has violated the statute. Plaintiff's claims that VITAS has supported Invoca in doing so by allowing Invoca access to the calls and has presumably paid Invoca to analyze the data those calls yield are sufficient to implicate section 631(a). Accordingly . . . VITAS may be found liable under section 631(a) for its role in assisting Invoca's monitoring and analysis of calls made to VITAS."); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause.").

As Judge Lin explained in *Ambriz v. Google*, 2025 WL 830450 (N.D. Cal. Feb. 10, 2025):

> Ninth Circuit courts are frequently called upon to apply the guidance of *Ribas* and *Rogers* to software service cases, and a split has emerged in courts' application of Section 631(a) to these facts. Some courts require plaintiff to allege that the software vendor actually used the data it obtained for its own, independent purpose. This requirement is usually described as the "extension test." Other courts require only that plaintiff allege the software vendor has the capability to use the data for its own purposes.

*Id.* at *3.

Here, Plaintiff's allegations are sufficient under either approach. For example, the Complaint alleges that Klaviyo has the capability to use and does use the wiretapped information for its own purposes, including building robust consumer profiles (Compl. ¶¶ 63–65) and train its artificial intelligence model. Compl. ¶¶ 66–68, Figs. 4–5. Critically, Plaintiff alleges "Defendant knows that Klaviyo uses identifiers and online activity for its own commercial purposes. Among other things, Klaviyo makes prominent representations on its website about how it leverages personal information to enhance its platform. Klaviyo claims, for example, that it's AI 'is trained on your brand, website, catalog, and profiles . . . .'" Compl. ¶ 74. Additionally, under the "extension test," the Complaint

alleges that Klaviyo can and does use the information it collects for its own purposes. *See e.g.* Compl. ¶¶ 9–10, 58–72, 74–75. At this stage, nothing more is required. *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 952 (N.D. Cal. 2024) (where the plaintiffs allege defendant had "the ability to use its record of the interaction for other purposes beyond just furnishing them to customer websites, the Court finds that Plaintiffs have alleged sufficient facts to meet the plausibility requirement"); *see Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021); *Ambriz*, 2025 WL 830450, at *3; *Goldstein v. Rumble Inc.*, 2025 WL 3691987, at *3 (C.D. Cal. Nov. 6, 2025) ("[W]hen data is transmitted to an independent entity that uses or is capable of using the data for that entity's own purposes, courts treat the third-party code as an eavesdropper and allow aiding and abetting claims to proceed against the website's owner."); *Smith I*, at *5 ("it is plausible to infer from [defendant's] alleged affirmative act of integrating the third-party code into its website that it knew [the third parties] would intercept [PII]"); *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *7 (S.D. Cal. Dec. 18, 2024) ("knowingly 'programm[ing] such third-party tracking technology into its website for advertising purposes and to increase its profits'" suffices to plead aiding and abetting); *cf Gabrielli v. Motorola Mobility LLC,* 2025 WL 1939957, at *11 (citing *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 894, 897 (S.D. Cal. 2025) (explaining that the Ninth Circuit has interpreted the intent standard under the federal Wiretap Act to require only an act being done on purpose, rather than done with the knowledge that it is unlawful, and then applying that analysis to also reject a challenge to CIPA Section 631)). Defendant's knowledge of the unlawfulness of its conduct also flows from the bedrock principle that "every citizen is presumed to know the law." *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 265 (2020).

**B. Plaintiff Alleges The Contents Of His Communications Were Intercepted**

Defendant's attempt to recharacterize Plaintiff's allegations as mere record information falls flat. Mot. at 13–14.

Courts interpret "content" under the CIPA and the ECPA as "the intended message conveyed by the communication . . . [not] includ[ing] record information regarding the characteristics of the message that is generated in the course of the communication." *Yoon v. Meta Platforms, Inc.*, 2024

WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (internal citations omitted); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Courts within the Ninth Circuit have agreed that "content" includes "the links, pages, and tabs users click and view and the search terms they employ," including those contained in URLs. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) ("URLs which disclose search terms that reveal website users' 'personal interests, queries, and habits' are 'contents' of communications under CIPA and ECPA."); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 871 ("search terms and descriptive URLs . . . constitute 'contents.'"); *see also Yoon*, 2024 WL 5264041, at *6 ("[T]he button click data associated with . . . titles are contents."); *In re Facebook*, 956 F.3d at 605; *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) ("URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act.") (internal citations omitted).

Defendant's position that "Plaintiff's vague allegations that communications containing his 'identity and information about his purchases' were 'intercepted and disclosed' fail to give Timex sufficient notice as to what information was actually collected about him from the purchase" is without merit. Mot. at 13. Here, Plaintiff alleges Defendant enabled Tracking Technologies to intercept and disclose "both the "characteristics" of individual's communications with its Website (their IP addresses, cookie identifiers, device identifiers, emails, and phone numbers) and the "content" of these communications (the buttons, links, pages, and tabs they click, and view related to the shopping and products sought from Defendant)." Compl. ¶ 82. Further, Plaintiff alleges that "Defendant discloses the URLs and page titles of every page that they visit, including during the checkout process" and provides figures showing the disclosed URLs. Compl. ¶ 84. When viewed in connection with Figures 8 through 10, the precise information disclosed is clear, Defendant receives "the total price, SKU, vendor, the presentment price, the URL of the item page, whether it is a variant design, the product type, title and description of the item," Compl. ¶ 85, Figs. 8–9 (product details). Such information qualifies as the "contents" of a communication. *See, e.g.*, *Casillas*, 812 F. Supp. 3d 1016, 1029 (holding that "information such as Plaintiff's and Website users' personal information

'including search queries,' 'products searched for,' 'user interests," and "browsing habits' are sufficient to allege that a defendant "transmitted 'content' information as required to state a claim under the Federal wiretap Act."); *Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4; *In re Meta Pixel Tax Filing Cases*, 724 F.Supp.3d 987, 1004 (N.D. Cal. 2024) (finding "contents" were intercepted where "[t]he financial information that was transmitted to Meta from the tax filing websites included . . . information affirmatively provided by the website user to the website"); *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1076 (N.D. Cal. 2023) ("[A] URL disclosing a search term or similar communication made by the user could constitute a communication under the statute.") (cleaned up); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("full-string detailed URL[s] are distinct from the IP addresses discussed in *Zynga* . . . .The URLs, by virtue of including the particular document within a website that a person views, reveal much more information . . . divulg[ing] a user's personal interests, queries, and habits. So too here.") (cleaned up).

**C. Plaintiff Alleges The Communications Were Intercepted "In Transit"**

Defendant conflates the plausibility requirements of Federal Rule of Civil Procedure 8 with the evidentiary burden required for summary judgment by suggesting Plaintiff has not alleged the communications were intercepted while "in transit." Mot. at 14–15. "While a plaintiff must do more than 'merely restate[ ] the pleading requirement of real time interception,' the standard is not overly burdensome." *Tenet Healthcare Corp.*, 789 F. Supp. at 838 (citing *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024)). "[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Id.* (citing *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024); *see also Casillas*, 812 F. Supp. 3d at 1032 (finding that communications were intercepted in transit where plaintiff alleged that defendant enabled third-party cookies to "surreptitiously track ***in real time*** and collect Website users' personal information, such as their browsing activities and private communications with Defendant, including[] the users' 'search queries' and 'products searched for' and without users' consent."); *St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *7 (N.D. Cal. Oct. 1, 2024) (explaining that "the key to

the interception analysis is whether the plaintiff alleges that transmission was simultaneous")). Moreover, "[a]t the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured." *St. Aubin*, 2024 WL 4369675, at *6. On a motion to dismiss, Plaintiff's allegations that Defendant intercepts communications in real-time are to be taken as true. *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023) ("Defendant argues that Plaintiff's allegations are conclusory and require more factual support. Not so."); *Byars v. Goodyear Tire and Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (same); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (same).

Here, Plaintiff details the exact way that Klaviyo's tracking technologies function to intercept communications in real time. Compl. ¶¶ 51–57, 77–87, Fig. 5. Further, Plaintiff provides visual examples of the advertising technologies learning the meaning of the communications it intercepts in real time. Compl. Figs. 8–10. Therefore, Plaintiff has alleged that the communications were intercepted in transit.

## VI. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 632

Defendant argues (1) only Klaviyo is alleged to have recorded, and § 632 lacks a derivative-liability clause; and (2) the communications were not "confidential." Mot. at 16. Not so.

Although not explicit, Section 632 allows for derivative liability. "All persons concerned in the commission of a crime . . . or aid and abet in its commission . . . are principals in any crime so committed." Cal. Penal Code § 31. "Nothing in the language of CIPA explicitly limits the application of section 31 . . . . In civil lawsuits for violations of section 632, courts have therefore imputed the civil liability standard for aiding and abetting to determine the scope of derivative liability." *Smith I*, 2025 WL 1085169, at *5. Thus, Section 31, when applied to CIPA § 632, "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *accord Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023); *Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522, at *8 (C.D. Cal. Mar. 31, 2026). Thus, Plaintiff plausibly alleges Defendant is liable as an eavesdropper under Section 632 under a theory of derivative liability.

Compl. ¶ 5 (Defendant "enables third parties, including Klaviyo, to eavesdrop on communications sent and received by Plaintiff and Class Members on the Website that Defendant owns and operates, including communications that contain PII.").

Further, a communication is confidential under Section 632 if a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 41 P. 3d 575, 582 (Cal. 2002); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 939 (N.D. Cal. 2023) ("The standard of confidentiality is an objective one defined in terms of reasonableness."). This is a "fact-intensive inquiry" that is often too difficult to resolve at the pleadings stage. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023). Even so, Plaintiff has established that he possessed an objectively reasonable expectation that the details of his purchase activity on the Website would be anonymous. *Compare Smith I.*, 2025 WL 1085169, at *5 ("Plaintiffs have alleged that they had a reasonable expectation of privacy in their personally identifiable browsing history as a result of the disclosures and promises in [the] privacy policy, which can be read to promise that third parties would not intercept or use said bundled information. This is sufficient to satisfy the confidentiality requirement at this stage of the proceedings."); *with* Compl. ¶¶ 4–5, 7, 9–10, 14–23.

Defendant's remaining arguments are without merit because they are premised on ***Defendant's*** recording, not the derivative liability theory for Defendant enabling third-party, Klaviyo to eavesdrop and record on Plaintiff's communications with the Website. *See e.g. Smith I*, 2025 WL 1085169, at *5 (sustaining a § 632 claim under a theory of derivative liability because "a conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.").

## VII. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 638.51

### A. CIPA Section 638.51 Is Not Limited To Telephones

Defendant, contrary to the plain language of the statute, posits "[n]othing in Section 638.51's language, history, or context suggests the Legislature meant for it to apply to routine web tools like those at issue here." Mot. at 18–19. That is wrong.

CIPA defines a pen register as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code. § 638.50(b). Every federal court to consider the question, including this one, has held "the term pen register is not limited to telephonic devices and may encompass the internet tracking devices at issue." *Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *8 (N.D. Cal. May 21, 2026) (Chen, J.); *Harris v. iHeartMedia, Inc.*, 2026 WL 247875, at *3 (N.D. Cal. Jan. 29, 2026) (same); *Casillas*, 812 F. Supp. 3d 1016, 1032 ("the Court finds Cal. Pen. Code § 638.51 is not limited to telephone communications"); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 871–72 ("the Court cannot ignore the expansive language in the California Legislature's chosen definition [of pen register], which is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (i.e. "device or process")); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1094–98 (N.D. Cal. July 18, 2025) (same); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 898 (S.D. Cal. 2025); *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025).

To the extent the Federal Pen Register Act imposes a limitation on the definition of a "pen register" that the CIPA does not, the CIPA "broadly defines 'pen register'" and the Court should "not use a similar federal statute so as to read a requirement into the text of a California statute." *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 41 (S.D.N.Y. 2025); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1075–77 (C.D. Cal. 2024) (rejecting argument that the CIPA should be limited by the Federal Pen Register Act). Defendant's CCPA argument fails for the reasons discussed *supra*-Section IV.

**B. Cookies Are Pen Registers**

Defendant posits "if the Court disagrees with Timex's prior argument that the cookies do not capture the 'contents' of communications, . . . that is an additional, independent reason to find the cookies are not pen registers." Mot. at 19.

However, a majority of courts have permitted such allegations to coexist at the motion to dismiss stage. *See e.g. Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d at 872 ("[The defendant] asserts, in passing, that Gabrielli's Section [638.51(a)] pen register claim cannot coexist with his Section 631(a) wiretapping claim because pen registers 'do not record contents,' but wiretaps do . . . . This argument would lead to the conclusion that any pen register that also recorded the 'contents' of users' information would no longer fall under the protection of Section 638.51(a) of CIPA. That cannot have been the Legislature's intent."); *Doe v. Talkiatry Mgmt. Servs., LLC*, 816 F. Supp. 3d 1206, 1210–12 (C.D. Cal. 2026) (dismissing the defendant's argument that alleging interception of "contents" "foreclose[s] [Plaintiff] from establishing that Meta Pixel fits the definition of a pen register."); *Casillas*, 812 F. Supp. 3d at 1030–33.

### C. Plaintiff Has Statutory Standing

Defendant attempts to argue Plaintiff lacks statutory standing because he fails to "allege facts establishing he suffered an injury caused by Klaviyo's code in violation of Section 638.51." Mot. at 20. That is wrong.

CIPA § 637.2 allows "[a]ny person who has been injured by a violation of this chapter"— privacy-related or otherwise— to "bring an action against the person who committed the violation," but "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Cal. Pen. Code §§ 637.2(a), (c). Thus, so long as Plaintiff has alleged a viable CIPA claim (and he has), this suffices for statutory standing and permits him to seek relief. *See Ribas v. Clark*, 38 Cal. 3d 355, 365 (1985) ("[P]laintiff asserts a violation of the Privacy Act … Section 637.2 therefore permits him to pursue his statutory remedy of a civil lawsuit for $3,000 [now $5,000], even though the judicial privilege bars his recovery for the only actual damage he claims to have suffered."). Defendant's cases pertain to Article III standing, not statutory standing; even so, courts have found Article III standing in cases analogous to this one. *Compare Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1183 (N.D. Cal. 2025) (No Article III standing); *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *6 (C.D. Cal. Dec. 29, 2025) (same); *with Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d at 865 ("[the plaintiff's] allegations that Haleon

deprived him control of personal information regarding his digital activity and profile are enough to show a concrete injury to his right to privacy and, subsequently, Article III standing."); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 ("Statutes such as CIPA thus 'codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.'").

## VIII. PLAINTIFF STATES A CLAIM UNDER THE ECPA

### A. Defendant Intercepted and Disclosed The "Contents" Of Plaintiff's Communications

As discussed *supra–Section* V, Defendant intercepted the "contents" of Plaintiff's communications while in transit. *Brodsky*, 445 F. Supp. 3d at 127 ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").

### B. Defendant's Conduct Falls Squarely Within The Crime-Tort Exception

Defendant concedes, an intended party is still liable under the crime-tort exception where the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). In other words, if Defendant intercepted and disclosed Plaintiff's communications "for the purpose of committing any tortious or criminal act," it cannot escape liability. The crime-tort exception focuses on whether "the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (internal quotations and citations omitted). At the time of interception, "a defendant must have had an independent prohibited purpose beyond the act of interception itself for the crime-tort exception to apply." *Id.* at 1202.

Defendant first argues that Plaintiff has not alleged independently illegal or actionable conduct. Mot. at 20–21. However, courts consistently find that the disclosure of private information constitutes an "independent prohibited purpose" beyond the act of interception. *See Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849 (E.D. Cal. 2025) ("Courts have applied the ECPA's crime-tort exception where the intentional *disclosure* of private information constituted a further impropriety independent and separate from [the] *interception* of private information.") (internal quotations omitted)*; In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D.

Cal. 2022) (suggesting that in a motion to dismiss context, "[t]here is a not-insignificant chance . . . that plaintiffs may be able to show that the crime-tort exception applies" where they allege that the defendant uses patient data for advertising).

*Smith v. Rack Room Shoes*, 2025 WL 2210002 is instructive. In *Smith II*, the defendant allegedly installed third party tracking software, on its website despite representing to consumers that it would not disclose personal information. *Id.* at *1. The court denied the defendant's motion to dismiss the wiretapping claims, holding that defendant's disclosure of "Plaintiff's personally identifiable information for advertising, in contradiction to the commitments it made in its privacy policy, can plausibly constitute a further invasion of privacy beyond the act of intercepting the information alone." *Id.* at *5; *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) ("Plaintiffs have adequately alleged that Google's association of their data with preexisting user profiles [without consent] violated state law, including CDAFA, intrusion upon seclusion, and invasion of privacy.").

Similarly, here Plaintiff has clearly alleged that Defendant disclosed personal information of its consumers to Klaviyo without their consent. Compl. ¶¶ 4–5, 7, 9–10, 14–23, 81–82, 90–92, 94, Fig. 10 (plain-text email). A number of courts have found "tortious intent sufficiently pled where . . . 'Plaintiffs have alleged that [technology companies] intercepted their communications for the purpose of associating their data with preexisting user profiles'[,] that this 'association of their data with preexisting user profiles [allegedly] violated state law,'" and that third parties "benefited from this interception by using the information to sell ads to other third-party advertisers." *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) (cleaned up); *see also Shah v. Capital One Fin. Corp.*, 768 F.Supp.3d 1033 (N.D. Cal. 2025) ("However, Plaintiffs also allege that Defendant intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts. Because Defendant's actions are allegedly tortious, the one-party exemption does not apply."); *Riganian*, 2025 WL 2021802, at *9–10. Here, Plaintiff has alleged that the data collected was assembled into profiles by Klaviyo and used to target Plaintiff with advertising, which profited both Defendant and Klaviyo. Compl. ¶¶ 3–5, 7, 16–23, 58–76, 127. This is precisely the conduct the *Smith* court held actionable. *Smith II*, 2025 WL 2210002, at *5

(holding allegations "that [the defendant] intended to disclose its customers' personally identifiable communications—which it had promised not to collect or use—to third parties so that it could deliver targeted ads to its customers" were sufficient to sustain an ECPA claim).

Defendant's argument that because a "primary motivation for using the Klaviyo cookies was to improve its marketing . . . the crime-tort exception does not apply" is meritless. Mot. at 22–23; *see Smith II.*, 2025 WL 2210002, at *5 ("the majority [of] courts . . . have held a monetary purpose does not insulate a party from liability under the Wiretap Act, at least at the motion to dismiss stage"); *R.S. v. Prime Healthcare Services, Inc.*, 2025 WL 103488, at *7 (C.D. Cal. 2025) ("a monetary purpose does not insulate a party from liability under the ECPA, at least at the motion to dismiss stage."); *R.C.*, 733 F. Supp. 3d 876, 901 ("even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply"); *Marden*, 2024 WL 4448684, at *3 ("[C]ontrary to [the defendant's] argument that any alleged interception was for [the defendant's] sole benefit and thus still within the party exception, [p]laintiffs allege that Google and Facebook benefited from this interception by using the information to sell ads to other third-party advertisers."); *Cooper v. Mount Sinai Health Systems, Inc.*, 742 F. Supp. 3d 369, 382 (S.D.N.Y., 2024) (explaining the defendant's "broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong.") (collecting cases); *Riganian*, 791 F. Supp. 3d at 1090 ("this Court is not persuaded that commercially exploiting unlawfully obtained information is 'licit' merely because it is profitable.").

## IX. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY

Defendant argues Plaintiff's invasion of privacy claims fails because "no privacy injury exists because the inadvertent disclosure of non-sensitive, commercial browsing data is not 'highly offensive.'" Mot. at 23. That is wrong.

To state a claim for invasion of privacy, a plaintiff must allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601. Plaintiff satisfies both elements.

Whether conduct is "highly offensive" is fact-bound and turns on "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994). Here, Plaintiff alleges far more than generic analytics Defendant suggests: he alleges Defendant deliberately offered him an opt-out, represented irrespective of that opt out that targeting cookies "do not store directly personal information," and then still configured the tracking technologies to share his email, his purchases, and his identifying browsing data with Klaviyo. Compl. ¶¶ 7, 16–18, 73–75, 87. A jury could reasonably conclude this is an egregious breach of social norms. *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 865 (N.D. Cal. 2026) ("engaging in unauthorized tracking and data collection, allowing it to compile detailed profile of each plaintiff's online web browsing activity – including highly sensitive browsing activity – tied to their email addresses and other personal identifiers is actionable.") (cleaned up); *Shah v. MyFitnessPal, Inc.*2026 WL 216334, at *5 (N.D. Cal. Jan. 27, 2026).

Unlike *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *18–19 (N.D. Cal. Apr. 11, 2024) where the complaint was deficient because there were no allegations the defendant did anything more than "hire third parties to do a job" here, Plaintiff alleges "Defendant knows that Klaviyo uses identifiers and online activity for its own commercial purposes. Among other things, Klaviyo makes prominent representations on its website about how it leverages personal information to enhance its platform. Klaviyo claims, for example, that it's AI 'is trained on your brand, website, catalog, and profiles . . . .'" Compl. ¶ 74; *see also* ¶ 10.

Defendant's reliance on *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), is misplaced. *Popa* addressed Article III standing under Pennsylvania's wiretapping act where the tracking merely helped a business "determine which parts of its website are effective with customers and which are not." *Id.* at 786. Defendant's reliance on *Hubbard v. Google LLC*, 2024 WL 3302066, at *7, is similarly unavailing. *Hubbard* did not address "deceptive data collection." Here, however, Defendant warrants its tracking is "aggregated and therefore anonymous" and that the tracking

technologies "do not store directly personal information." Compl. ¶¶ 7, 14–23, Fig. 3. Defendant's reliance on *Garcia v. Blackhawk Network, Inc.*, is similarly misplaced, as the court did not reach state law claims after dismissing the ECPA claim. *Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *6 (C.D. Cal. Apr. 1, 2026).

Defendant's attempt to recharacterize Plaintiff's allegations by stating that Plaintiff was merely shopping for a watch he would "presumably be wearing in public," conflates the well-pleaded allegations that the data it intercepted and disclosed to Klaviyo included Plaintiff's identity, his email address, the specific products he viewed and purchased, his device fingerprints, despite representing it did not disclosure directly personal information to third parties. Compl. ¶¶ 7, 14–23, 24–33, 58–76, 82, 86–87; *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) ("deceit can be a kind of 'plus' factor [that is] significant in . . . making a privacy intrusion especially offensive."). Whether that intrusion is highly offensive is a factual question for the jury. *Id.* ("Whether [defendant's] collection and storage of location data . . . was highly offensive to a reasonable person is a question of fact.").

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court deny Defendant's motion to transfer or dismiss in its entirety. Should the Court find dismissal of any claims warranted, Plaintiff seeks leave to amend the Complaint.

Dated: May 26, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*