DAVIS WRIGHT TREMAINE LLP
James H. Moon (SBN 268215)
jamesmoon@dwt.com
Sancho Accorsi (SBN 329413)
sanchoaccorsi@dwt.com
Jennifer Yu (SBN 341606)
jenniferyu@dwt.com
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendant Timex.com, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| TREVOR LUTGE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TIMEX.COM, INC.,<br><br>Defendant. | Case No. 3:26-cv-00960-EMC<br><br>**DEFENDANT TIMEX.COM, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER OR DISMISS COMPLAINT**<br><br>Assigned to the Hon. Edward M. Chen<br>Courtroom: 5<br><br>Date: June 25, 2026<br>Time: 1:30 p.m.<br><br>Action Filed: January 30, 2026 |

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. THE COURT SHOULD TRANSFER THIS ACTION ..... 1

A. Plaintiff Assented to the Forum-Selection Clause. ..... 1

1. Connecticut Law Governs Contract Formation. ..... 1

2. Plaintiff Assented to the Terms and Their Forum-Selection Clause. ..... 3

3. The Terms Cover this Dispute. ..... 5

B. Plaintiff Cannot Show that Transfer Is Inappropriate. ..... 5

III. THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM ..... 6

A. Plaintiff Fails to Allege a Violation of Cal. Pen. Code § 631. ..... 6

1. Klaviyo Was a Party to the "Communications." ..... 7

2. No Contents. ..... 8

3. No Reading in Transit. ..... 9

B. Plaintiff Fails to Allege a Violation of Cal. Pen. Code § 632. ..... 10

1. Timex Did Not Eavesdrop or Record. ..... 10

2. No Confidential Communications. ..... 10

C. Plaintiff Fails to Allege a Violation of Cal. Pen. Code § 638.51. ..... 11

1. Section 638.51 Only Applies to Telephonic Communications. ..... 11

2. Cookies Are Not Pen Registers. ..... 12

3. Plaintiff Lacks Statutory Standing. ..... 13

D. Plaintiff's ECPA Claim Fails. ..... 13

E. Plaintiff Does Not Allege Invasion of Privacy. ..... 15

IV. CONCLUSION ..... 15




DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022)....................3, 4

*Bittner v. United States*,
598 U.S. 85 (2023)....................6

*Blaker v. NetScout Sys., Inc.*,
No. 25STCV31283 (L.A. Super. Ct.)....................12

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. Aug. 7, 2023)....................8, 11

*Chabolla v. ClassPass Inc.*
129 F.4th 1147 (9th Cir. 2025)....................5

*Crowell v. Audible Inc.*,
806 F. Supp. 3d 1216 (W.D. Wash. 2025)....................5

*Cruz v. Tapestry, Inc.*
113 Cal. App. 5th 943 (2025)....................3

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. Oct. 17, 2025)....................6, 10

*Doe v. Kaiser Foundation Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)....................7, 8, 14, 15

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023)....................3, 4

*Emp. Sols. Mgmt., Inc. v. Partners Pers.—Cent. Valley, Corp.*,
2017 WL 7370971 (C.D. Cal. Nov. 8, 2017)....................2

*Faulkner v. ADT Sec. Servs., Inc.*,
706 F.3d 1017 (9th Cir. 2013)....................10, 11

*Finsa Portafolios, S.A. DE C.V. v. OpenGate Cap. LLC*,
769 F. App'x 429 (9th Cir. 2019)....................5, 6

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025)....................8, 12, 13

*Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. Apr. 1, 2026)....................15



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) .......... 4, 5

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 7

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .......... 6, 10

*Heinz v. Amazon.com, Inc.*,
2023 WL 4466904 (E.D. Cal. July 11, 2023) .......... 6

*Hubbard v. Google, LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 11

*In re Google Location Hist. Lit.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......... 15

*In re Meta Pixel*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 15

*In re Meta Pixel Tax Filing*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 8, 12

*In re Zerbe*,
60 Cal. 2d 666 (1964) .......... 13

*Interface Flooring Sys., Inc. v. Aetna Cas. & Sur. Co.*,
261 Conn. 601 (2002) .......... 2

*J.S. v. SpringFertility Holdings, LLC*,
2026 WL 1483490 (N.D. Cal. May 27, 2026) .......... 10

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) .......... 9

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. Apr. 6, 2023) .......... 8

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 3, 4

*Kenney v. JPMorgan Chase Bank, N.A.*,
2025 WL 2117415 (C.D. Cal. June 13, 2025) .......... 7

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) .......... 15

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) .......... 4



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Marden v. LMND Medical Group, Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) .......... 14

*Meyer v. Kalanick*,
200 F. Supp. 3d 408 (S.D.N.Y. 2016), *vacated*, 868 F. 3d 66 (2d Cir. 2017) .......... 2

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) .......... 10

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 1, 2

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 4

*Ortiz v. Foris Dax, Inc.*,
2026 WL 1430720 (N.D. Cal. May 21, 2026) .......... 8, 9, 11, 15

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .......... 3

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .......... 13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 15

*Price v. Headspace, Inc.*,
2025 WL 1237977 (Cal. Super Ct. Apr. 1, 2025) .......... 12

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 8

*Reichhold Chemicals, Inc. v. Hartford Acc. & Indem. Co.*,
243 Conn. 401 (1997) .......... 2

*Reno v. ACLU*,
521 U.S. 844 (1997) .......... 4

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 14

*Schmidt v. Devino*,
206 F. Supp. 2d 301 (D. Conn. 2001) .......... 2

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012) .......... 2

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) .......... 15



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 11

*Variety Media, LLC v. Super. Ct.*,
No. B350578 (Cal. Ct. App.) .......... 12

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) .......... 7

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. July 15, 2021) .......... 8, 9

**Statutes**

28 U.S.C. § 1404(a) .......... 6

Cal. Civ. Code § 1798.175 .......... 6

Cal. Pen. Code
§ 31 .......... 10
§ 629.50 .......... 12
§ 631 .......... *passim*
§ 631(a) .......... 7, 9, 10
§ 632 .......... 10, 12
§ 632(c) .......... 11
§ 637.2 .......... 13
§ 637.2(a) .......... 13
§ 638.50 .......... 12
§ 638.50(b) .......... 12
§ 638.50(c) .......... 12
§ 638.51 .......... 11, 12, 13
§ 638.53(a) .......... 13

Conn. Gen. Stat. § 54-41r .......... 2

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 6, 10, 11



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff spends one paragraph in a 39-page complaint vaguely alleging that he visited Timex's website and made purchases, with the majority of his allegations focused on what Klaviyo does generally as a business and information it theoretically could collect. Compl. ¶ 7. He says these spare allegations make Timex criminally liable for its alleged use of Klaviyo cookies he concedes "[h]undreds of thousands of businesses" use. *Id.* ¶¶ 16, 59. Plaintiff's claims cannot proceed in this Court for multiple reasons that his Opposition fails to rebut.

***Motion to Transfer***. Under the Terms' forum-selection clause, to which Plaintiff assented, Plaintiff agreed to litigate any disputes in Connecticut. The clause should be enforced.

***Motion to Dismiss***. Alternatively, Plaintiff's action, which is based on a theory that innocuous and commonplace cookies constitute criminal wiretaps and pen registers, should be dismissed. CIPA should not be interpreted in the broad way Plaintiff suggests, both because of its criminal nature and because the Legislature did not intend CIPA to cover the alleged conduct at issue. His ECPA and invasion of privacy claims are also insufficiently pleaded.

Timex respectfully requests that this Court transfer or dismiss the action with prejudice.

## II. THE COURT SHOULD TRANSFER THIS ACTION

Because Plaintiff assented to the forum-selection clause by signing up for Timex's promotions, Plaintiff has the burden of showing that the public interest factors in this case overwhelmingly disfavor transfer of his action. He fails to do so in his Opposition.

### A. Plaintiff Assented to the Forum-Selection Clause.

#### 1. Connecticut Law Governs Contract Formation.

As a threshold issue, Connecticut law governs assent because the Terms select Connecticut law. *See* Mot. at 8. Though Plaintiff disputes that he agreed to the Terms (and the choice-of-law provision) in the first place, Opp. at 4, this does not mean California law governs assent. In *Nguyen v. Barnes & Noble Inc.*, the Ninth Circuit applied the selected foreign law to determine "whether a valid … agreement exist[ed]." 763 F.3d 1171, 1175–76 (9th Cir. 2014). The Court should follow *Nguyen* and apply Connecticut law to assess whether Plaintiff agreed to



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

the Terms. *Id.*; *see Emp. Sols. Mgmt., Inc. v. Partners Pers.—Cent. Valley, Corp.*, 2017 WL 7370971, at *4 (C.D. Cal. Nov. 8, 2017) (applying chosen law to determine "whether the parties [were] bound by the agreement"). In any event, Plaintiff says "internet contract principles are substantially the same" under Connecticut and California contract law. Opp. at 5; *see Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012). Plaintiff challenges the enforceability of the choice-of-law provision *as it applies to his claims*, Opp. at 4–5, but that is a different issue from whether it applies to contract formation.[1]

Even if the Court found Connecticut and California contract law differed as applied to this case, California's governmental interest test would still require the Court to apply Connecticut law to the question of contract formation. That is because applying California law would significantly impair Connecticut's strong policy of applying the "law of the state in which the bulk of the contracting transactions took place." *Reichhold Chemicals, Inc. v. Hartford Acc. & Indem. Co.*, 243 Conn. 401, 414 (1997) (adopting Restatement Section 188). Here, that is Connecticut because Connecticut is where Timex is based, and where Timex drafted the Terms, presented the Terms to Plaintiff, and performed under the Contract by sending promotional messages from Connecticut and shipping Plaintiff's watch from Connecticut. *See Meyer v. Kalanick*, 200 F. Supp. 3d 408, 413 (S.D.N.Y. 2016) (Section 188 "weighed heavily" in favor state where "one of the parties to the alleged contract and the contract's drafter" was based), *vacated*, 868 F. 3d 66, 74 (2d Cir. 2017) (but affirming choice-of-law ruling). In addition, the website tracking allegations at issue in the Complaint—on behalf of a putative nationwide class—relate to actions on Timex's website. Applying different states' contract law to determine whether any given customer assented to the Terms would contravene Connecticut's strong policy in "certainty, predictability and uniformity of result" through contract. *Interface Flooring Sys., Inc. v. Aetna Cas. & Sur. Co.*, 261 Conn. 601, 609 (2002).

[1] Plaintiff does not address Connecticut's wiretapping statute, which offers substantially the same protections as CIPA. *See* Conn. Gen. Stat. § 54-41r; *Schmidt v. Devino*, 206 F. Supp. 2d 301, 309 (D. Conn. 2001) (Connecticut wiretapping statute "provides that '[a]ny person whose wire communication is intercepted … shall (1) have a civil cause of action against any person who intercepts, … and (2) be entitled to recover from any such person").



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**2. Plaintiff Assented to the Terms and Their Forum-Selection Clause.**

On the merits, Plaintiff assented to the Terms. *See* Mot. at 8–10. Plaintiff fails to address any of the case law that Timex cites in its moving papers. *See* Opp. at 6–8. This case is just like *Edmundson v. Klarna, Inc.*, 85 F.4th 695 (2d Cir. 2023), where the Second Circuit found both inquiry notice and unambiguous assent to terms, and which Plaintiff does not address.

***Inquiry Notice.*** Timex presented its Terms on an uncluttered screen, with the hyperlinks to the Terms "set apart from surrounding information by being underlined and in a color that stands in sharp contrast" to the background color. *Edmundson*, 85 F.4th at 706. Moreover, the Terms were "spatially and temporally coupled" with the user's transaction because they appear right below the button to continue. *Id.*

None of Plaintiff's cited cases alter the analysis. For one, the advisal is hardly so small that a user needs to "squint to see" it, Opp. at 6, nor is it "barely legible to the naked eye" and "buried in fine print." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856–57 (9th Cir. 2022). Regardless, "even if in smaller font," Timex's advisal was comparable to the "Email Address" and "Birthday" fields and, considering the screen as a whole, legible and reasonably conspicuous. *Edmundson*, 85 F.4th at 706. *Cruz v. Tapestry, Inc.* is distinguishable for the same reason. 113 Cal. App. 5th 943, 958 (2025).

Next, Plaintiff frets that "Terms & Condition" is not blue, Opp. at 6, but even if "it could be argued that blue font is a better signal" of a hyperlink, "there are no particular features that must be present to satisfy the reasonably conspicuous standard." *Edmundson*, 85 F.4th at 707; *see Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (defendant provided "reasonably conspicuous notice" even though "links [were] not blue, underlined, or capitalized"). Indeed, "Terms & Condition" is underlined, in black font contrasting with the white background, with title-case capitalization, and directly adjacent to the "Continue" button—exactly where any reasonable internet user would expect to see a link to terms. It is also presented in a single sentence addressing just one thing—assent to the Privacy Policy and Terms & Condition. These "[c]ustomary design elements denot[e] the existence of a hyperlink." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1021 (9th Cir. 2024) (citation omitted). Again, the pop-up is nothing


DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

like the cluttered pages in *Berman*, *see* Opp. at 6, and Timex did more to "set apart" the advisal "than simply underscore the hyperlinked text," 30 F.4th at 857, *i.e.*, it used contrasting font, title-case, placement, and single sentence. In any event, *Berman*'s "observation that '[s]imply underscoring words or phrases … will often be insufficient' … is problematic," *Godun v. JustAnswer LLC*, 135 F.4th 699, 714 (9th Cir. 2025) (Nelson, J., concurring) (quoting *Berman*, 30 F.4th at 857), because it "is neither true as a matter of practice …, nor does it accord with how … the internet has worked." *Id.* (citing *Reno v. ACLU*, 521 U.S. 844, 852 (1997)). Plaintiff's string cite, *see* Opp. 6–7, is distinguishable for these reasons.

Finally, Plaintiff argues that a user making a one-time purchase will not expect to be bound, *see* Opp. at 7–8, but he was not making a one-time purchase when he assented to the Terms; he was "signing up" for ongoing promotional messaging. Mot. at 2–3.

***Unambiguous Manifestation of Assent.*** Plaintiff unambiguously manifested his assent to the Terms "through … conduct that a reasonable person would understand to constitute assent." *Edmundson*, 85 F.4th at 707. Indeed, "it would be unreasonable for an internet user to read the conspicuous and clear statement" that a user is agreeing to Timex's Terms by signing up, and "not understand that the ['Continue'] button is the mechanism by which the user" confirms their agreement and "continues the transaction." *Id.* at 708.

Plaintiff complains that the action button stated "Continue," but the advisal said "sign[] up." Opp. at 8. This critique misstates the law. The test is whether the website "make[s] clear to the reasonable internet user that a specific 'click' signifies assent." *Edmundson*, 85 F.4th at 708; *see Godun*, 135 F.4th at 716–17 (Nelson, J., concurring) (noting *Edmundson* "correctly" reads California contract law as "look[ing] to the reasonable meaning of parties' words and acts"). Thus, an advisal can "explicit[ly] advise[] of what actions will be taken to signify assent," *Godun*, 135 F.4th at 713, even without a perfect match between the advisal ("by signing up") and the action button ("Continue"). *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515–16 (9th Cir. 2023) (users assented by "click[ing] the '*Sign in*' button" above advisal that, "[b]y *continuing* past this page, you agree to the Terms of Use") (emphasis added); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020) (same); *Keebaugh*, 100 F.4th at 1021


DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

n.6 (user assented to "Terms of Service" even though advisal referred to "Terms of Use" because "mutual assent is based on 'the reasonable meaning' of the parties' words").

Indeed, there is no ambiguity as to what a user is doing by clicking "Continue" on a screen that only offers the option to "sign[] up" for a promotion. *See Crowell v. Audible Inc.*, 806 F. Supp. 3d 1216, 1226 (W.D. Wash. 2025) (enforcing online agreement where " 'Continue' button—just below text directing the user to '[s]ign in with your Amazon account'—c[ould] mean only one thing").

Plaintiff's authorities are distinguishable. *See* Opp. at 8. The four-page sign-up process in *Chabolla v. ClassPass Inc.* never advised that a particular action would sign users up. 129 F.4th 1147, 1158 (9th Cir. 2025). And the advisal in *Godun* simply stated "I agree" without advising what action would constitute assent. 135 F.4th at 712–13.

**3. The Terms Cover this Dispute.**

Finally, the forum-selection clause covers Plaintiff's claims because the clause covers any dispute "arising from or relating to the[] Terms," which in turn incorporate the Privacy Policy covering Timex's data practices. Mot. at 6. Plaintiff suggests that Timex's Terms and Privacy Policy (and thus the forum-selection clause) do not cover his claims because the Privacy Policy references Klaviyo only in the context of telephonic communications. Opp. at 9. But the Privacy Policy covers *anything* related to how Timex "collects, uses, processes, secures, shares and transfers information," how a user can change their preferences, and how a user accesses and uses the website. *See* McAuslan Decl., Ex. C at 1. Plaintiff's claims regard these exact topics and thus "aris[e] from or relat[e] to" the Terms, for which the forum-selection clause provides the "exclusive jurisdiction" of a state or federal court located in Connecticut. *Id.*, Exs. A, B.

**B. Plaintiff Cannot Show that Transfer Is Inappropriate.**

Given that Plaintiff assented to the forum-selection clause, he carries the burden of showing that the forum-selection clause "was the result of fraud, undue influence, or overweening bargaining power," that the selected forum is so inconvenient that he will "for all practical purposes be deprived" of his day in court, or that enforcement would contravene a strong public policy of California. *Finsa Portafolios, S.A. DE C.V. v. OpenGate Cap. LLC*, 769



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

F. App'x 429, 430 (9th Cir. 2019); *see* Mot. at 10. This test favors transfer "in all but the most exceptional cases" and "eliminates the need for the court to examine the parties' private interests." *Finsa Portafolios,* 769 F. App'x at 430. But Plaintiff argues exclusively under the "normal § 1404(a) framework." Opp. at 9. His arguments therefore miss the mark and do not carry his burden to avoid his agreement to litigate in Connecticut. *See* Mot. at 10–11. This Court should transfer the case as have others in indistinguishable circumstances. *See Heinz v. Amazon.com, Inc.*, 2023 WL 4466904, at *5 (E.D. Cal. July 11, 2023) (transferring CIPA claims pursuant to forum-selection clause in indistinguishable circumstances).

Accordingly, the Court should transfer this action to the District of Connecticut.

## III. THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM

Alternatively, the Court should dismiss Plaintiff's claims under Rule 12(b)(6).

### A. Plaintiff Fails to Allege a Violation of Cal. Pen. Code § 631.

As an initial matter, the Court should construe CIPA with the CCPA in mind because the CCPA *permits* the use of web tools like the Klaviyo tool at issue here. Mot. at 4–5. Plaintiff responds that the CCPA defers to any law affording "greatest protection" for privacy rights, Opp. at 10, but that is only the case "*in the event of a conflict* [with] other laws." Cal. Civ. Code §1798.175 (emphasis added). There is no conflict between the CCPA and CIPA because CIPA was not intended "to apply to the type of conduct implicated by this case at all." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1118–19 (N.D. Cal. Oct. 17, 2025); *see Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) (Bybee, J., concurring) (CIPA "as passed in 1967, focuses on the wiretapping of telegraph or telephone wires" and noting that until the legislature amends Section 631(a), "plaintiffs [] are not without recourse, thanks to the [CCPA]"). Plus, this savings clause still does not answer why the Legislature gave companies five years to comply with the CCPA's opt-out regime while knowing all along that CIPA imposed an opt-in regime. In any event, as a criminal statute, CIPA must be construed strictly, regardless of the CCPA. *Bittner v. United States*, 598 U.S. 85, 102 (2023).[2]

[2] Plaintiff also says his allegations do not conflict with the CCPA because he alleges the cookie banner malfunctioned when users clicked "reject all." Opp. at 1. But he mischaracterizes the Complaint, which takes issue with alleged tracking as soon as a customer enters the website.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Through this lens, Plaintiff's Section 631 claim should be dismissed because he fails to allege that Klaviyo violated Section 631 for three reasons. Mot. at 12–15.

**1. Klaviyo Was a Party to the "Communications."**

Klaviyo did not eavesdrop under Section 631(a) because Klaviyo operated as an extension of Timex when it allegedly recorded any communications. Mot. at 12–13. Here, as in *Doe v. Kaiser Foundation Health Plan, Inc.*, Plaintiff's allegations show that Klaviyo was "hired by a party to the communication to do work solely for the party's benefits." 2024 WL 1589982, at *14 (N.D. Cal. Apr. 11, 2024) (Chen, J.); *see Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (section 631 does not apply to recordings "by a participant to a conversation").

The Opposition cites cases finding sufficient at the pleadings allegations that a third party is merely *capable* of using intercepted communications for other purposes, Opp. at 11–13, but a third party is not *per se* an eavesdropper. *Kaiser*, 2024 WL 1589982, at *17–18; *see Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) (no eavesdropping where "there are no allegations that [the service provider] intercepted and used the data itself"). In any event, Plaintiff does not plausibly allege Klaviyo can use any of Timex's web data for its own benefit. His *only* concrete allegation about Klaviyo *on the Site* is that "Klaviyo and Defendant used this data … so that *Defendant* could run advertisements using its services." Compl. ¶ 75 (emphasis added). Indeed, Timex's Privacy Policy represents that Klaviyo "perform[s] services on [Timex's] behalf based on [Timex's] instructions." McAuslan Decl., Ex. C. Plaintiff points to paragraphs 9, 10, and 58 through 76, Opp. at 11–12, but paragraphs nine and 10 say nothing about how Klaviyo uses information, Compl. ¶¶ 9–10, and paragraphs 58 through 76 only describe what Klaviyo does as a company as a general matter, with no connection to timex.com. *Id.* ¶¶ 58–76.[3] Finally, paragraph 74 says Klaviyo "uses identifiers and online activity for its

---

Compl. ¶ 83. And even if Plaintiff challenges only tracking *after* the cookie banner, this changes nothing because it implicates none of CIPA's elements. Under his theory, Timex did not have consent to use Klaviyo before *or* after the cookie banner. Notably, the CCPA does not provide a private right of action to bring claims for malfunctioning cookie banners. *Kenney v. JPMorgan Chase Bank, N.A.*, 2025 WL 2117415, at *8 (C.D. Cal. June 13, 2025).

[3] *E.g.*, Plaintiff alleges that Klaviyo offers a service called "Active on Site," recognizable by its "code snippets" "Klaviyo.js," "__kla_id," and "kl-post-identification-sync," Compl. ¶¶ 60–62, but the code in the Complaint does not show those indicators. *See id.* ¶¶ 84–86, Figs. 8–11.


DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

own commercial purposes," *Id.* ¶ 74; *see* Opp. at 12, but Plaintiff supports this position with a Klaviyo webpage that explains the AI "acts on your"—*i.e.*, Timex's—"behalf." Klaviyo, *Klaviyo AI*, available at https://www.klaviyo.com/solutions/ai. In short, the Complaint does not plausibly allege that Timex's use of Klaviyo tools "materially increases the risk of dissemination of the collected information." *Kaiser*, 2024 WL 1589982, at *19.

**2. No Contents.**

Separately, Plaintiff alleges only record information, not the contents of any communication. Mot. at 13–14. His Opposition only confirms this. Opp. at 14.

The only information the Complaint alleges *about Plaintiff himself* is his "purchase information" and "email address." Compl. ¶ 75; *see* Mot. at 14. The Opposition confirms this. Opp. at 14 (detailing "product details"). The Motion also showed that these data points are not contents. *See* Mot. at 14 (citing cases); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 n.9 (N.D. Cal. Apr. 6, 2023) ("purchase intent signals, and add-to-cart actions" not contents). Plaintiff cites a number of cases discussing search terms, *see* Opp. at 14–15 (citing *Gabrielli*, *Carrier IQ*, *Casillas*, *Meta Platforms*, and *Brown*), but he does not allege Klaviyo collected any search terms nor that he even made any searches on the website. *See Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *6 (N.D. Cal. May 21, 2026) (Chen, J.) (dismissing where complaint "[was] silent on the actions [plaintiffs] *personally* took on the [website] after clicking the 'disable cookies' button"). Likewise, *In re Meta Pixel Tax Filing Cases* also does not help Plaintiff because the complaint there alleged that the websites disclosed financial information, including information "affirmatively provided" by the user in filling out tax forms. 724 F. Supp. 3d 987, 1004 (N.D. Cal. 2024). Here, Plaintiff does not allege Klaviyo even in general collects "user-generated material" "constitute[ing] message content in the same way that the words of a text message or an email do." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. July 15, 2021). Finally, Plaintiff cites *R.C. v. Walgreen Co.* for the proposition that "links, pages, and tabs users click" are contents, but *R.C.* actually explains that "not every click or activity on the website" reveals the contents of a communication; only those that disclosed "personal health information" sufficed. 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024).


DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

This ends the inquiry because merely "[l]isting general categories of information that [p]laintiffs allege the cookies are capable of collecting … does not suffice" to plead contents. *Ortiz*, 2026 WL 1430720, at *5. But, even if Klaviyo collected the information Plaintiff alleges it *could* collect, this would still not qualify as contents. Mot. at 14. Plaintiff insists "IP addresses, cookie identifiers, device identifiers, emails, and phone numbers" are contents, Opp. at 14–15, but he ignores Timex's authority that they are not. *See Yoon*, 549 F. Supp. at 1082 ("keystrokes, mouse clicks, pages viewed, and … IP address, … browser type, and the operating system" not contents). Nor are "buttons, links, pages, and tabs" clicked. *See id*.

**3. No Reading in Transit.**

Plaintiff also fails to allege that Klaviyo attempted to "read" any communications "in transit." Cal. Pen. Code Section 631(a); *see* Mot. at 14–15. In opposition, Plaintiff does not meaningfully dispute that he has not alleged that Klaviyo "read" any communication. *See* Opp. at 15–16 (contending only that Plaintiff has sufficiently alleged the communications were "intercepted" in transit). Rather, he only points to incomprehensible figures from his complaint and contends the figures provide "visual examples of the advertising technologies learning the meaning of the communications." *Id.* at 16 (citing Compl. ¶¶ 84–86, Figs. 8–11). But the figures at most show data transmitted to Klaviyo, not what Klaviyo *does* with that data. Compl. ¶¶ 84–86 (describing the figures as showing what Timex discloses to Klaviyo).

Even if Plaintiff alleges that Klaviyo "read" any communications, he does not plausibly allege it did so while the communications were "in transit." Mot. at 15. The statute expressly requires a party to "*read*" the communication "in transit"—nowhere does the word "intercept" appear. Cal. Pen. Code Section 631(a); *see James v. Allstate Ins. Co.*, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023) (dismissing section 631 claim holding that the plaintiff "has similarly not alleged [the third-party] read, attempted to read, or to learn the meaning of his communications" with the defendant). No allegations in the complaint give rise to any inference that any reading happened at all, after the alleged interception, or during the interception. Plaintiff's cited authority that he has sufficiently pleaded interception of real-time communications is inapposite, because none of these cases dealt with the issue of whether



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

simultaneous *interception* means simultaneously *reading*. Opp. at 15–16; *cf. Gutierrez*, 2025 WL 1895315, at *1 (dismissing Section 631 claim even where third party just "*could* read" communications); *Eating Recovery*, 806 F. Supp. 3d at 1118 (third party "must do something more than just intercept the communication while it is in transit").

**B. Plaintiff Fails to Allege a Violation of Cal. Pen. Code § 632.**

**1. Timex Did Not Eavesdrop or Record.**

Unlike Section 631, Section 632 does not provide for Timex's derivative liability for Klaviyo's alleged recording, yet Plaintiff alleges that "*Klaviyo* eavesdropped and/or recorded … in violation of § 632," not Timex. Compl. ¶ 155; *see* Mot. at 16. Plaintiff concedes this.

So, the Opposition turns to the general aiding and abetting provision in the California Penal Code, Section 31. Opp. at 16. But allowing for Section 31 derivative liability would make "aid[ing]" in Section 631 superfluous. *See* Cal. Pen. Code § 631(a). And Plaintiff cites to no binding authority that criminal aiding and abetting liability applies to *civil* Section 632 claims. The Court should not read criminal laws so broadly. *See J.S. v. SpringFertility Holdings, LLC*, 2026 WL 1483490, at *6 (N.D. Cal. May 27, 2026) (dismissing Section 632 claim on this basis).

Regardless, the Complaint never mentions Section 31 and includes only one conclusory allegation that Timex is "liable for aiding and abetting." Compl. ¶ 158. This "single reference" is not "a sufficient toehold for an aiding-and-abetting theory" under Section 632. *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *9 n.13 (C.D. Cal. Oct. 4, 2024) (dismissing Section 632 claim on this basis); *see J.S.*, 2026 WL 1483490, at *6 (same).

**2. No Confidential Communications.**

Plaintiff has not plausibly pleaded that any communications he alleges Klaviyo had access to were confidential because it is objectively unreasonable for him to expect Timex to have no record of his "purchase activity"—the only category of information at issue, Opp. at 17—when Timex must have a record of that to process his order. Mot. at 16–17. Plaintiff contends that this objective standard should not be resolved on the pleadings, Opp. at 17, but he is wrong. *See Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013) ("To prevail against the Rule 12(b)(6) motion, then, [Plaintiff] would have to allege facts that would


DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

lead to the plausible inference that his was a … communication that he had an objectively reasonable expectation was not being recorded.”). Here, as in *Faulkner*, Plaintiff’s allegations are “no more than a threadbare recital” of the statute, which is insufficient. *Id.*; *see* Compl. ¶¶ 152–53 (alleging data was confidential because users “had an objectively reasonable expectation of priva[cy]” and “expected their communications … to be confined”).

This is unlike *Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. Aug. 7, 2023), which Plaintiff cites as a case where the inquiry was “fact-intensive.” Opp. at 17. There, the plaintiffs’ alleged communications made in Google’s “Incognito” browser could plausibly have been intended to be confidential since the user was “browsing privately.” *Brown*, 685 F. Supp. 3d at 937. Here, Plaintiff could not reasonably expect that Timex *would not* record the fact that he purchased a watch. *Smith v. Rack Room Shoes, Inc.* is further distinguishable, as there the company’s privacy policy affirmatively promised that third parties would not intercept *any* information. 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025). Timex’s Privacy Policy and its cookie banner disclose that user information may be shared and warned that some cookies could not be deactivated regardless of a user’s choice on the cookie banner. *See* McAuslan Decl., Ex. C (“We and certain of our trusted third party providers collect” information such as “pages accessed”); Compl. ¶ 16 (depicting “Strictly Necessary Cookies” as “Always Active”). This is enough to alert a reasonable user that his interactions with the Site “may be … recorded.” Cal. Pen. Code § 632(c). Ultimately, “[c]ontemporary internet browsing involves the collection of users’ data … and a reasonable user should expect as much.” *Hubbard v. Google, LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024).

### C. Plaintiff Fails to Allege a Violation of Cal. Pen. Code § 638.51.

Plaintiff’s Section 638.51 claim also fails for three separate reasons.

#### 1. Section 638.51 Only Applies to Telephonic Communications.

Section 638.51 does not apply to the internet communications at issue. *See* Mot. at 17–18. Since Timex’s Motion, this Court reached a different conclusion. *See Ortiz*, 2026 WL 1430720, at *6. Timex respectfully disagrees for the reasons in its Motion and notes that the California Court of Appeal is reviewing this question. *See Variety Media, LLC v. Super. Ct.*, No.


DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

B350578 (Cal. Ct. App.); *Blaker v. NetScout Sys., Inc.*, No. 25STCV31283 (L.A. Super. Ct.), May 27, 2026, Order. (dismissing on this basis).

**2. Cookies Are Not Pen Registers.**

Even if Section 638.51 applies to the internet, this claim fails. For starters, if the Court finds Klaviyo captures "content" (it does not), this means the cookies are *not* pen registers because pen registers collect "dialing, routing, addressing, or signaling information … *but not the contents of a communication*." Cal. Pen. Code § 638.50(b)–(c); *see* Mot. at 19. Plaintiff skirts the issue, responding only that his factually inconsistent allegations can "coexist," citing *Gabrielli*. Opp. at 18. *Gabrielli* relied on *In re Meta Pixel Tax Filing Cases* in finding that it "cannot have been the Legislature's intent" to disqualify pen registers that record "contents" from CIPA. *Gabrielli*, 815 F. Supp. 3d at 872 (citing *Meta*, 793 F. Supp. 3d 1147, 1154 (N.D. Cal. 2025)). Both cases were wrongly decided for numerous reasons.

For starters, *In re Meta Tax Filing* characterized the definition of a "pen register" as "ambiguous," 793 F. Supp. 3d at 1153, but the statute cannot make any clearer that "[a] trap and trace device, by definition, cannot capture the content of the communications." *Price v. Headspace, Inc.*, 2025 WL 1237977, at *3 (Cal. Super Ct. Apr. 1, 2025). The *Meta* court also worried that reading the statute by its plain language would "permit the installation and use of pen registers so long as those devices also record the contents" of a communication. *Meta*, 793 F. Supp. 3d at 1153. But, this is misplaced because a "host of statutes and caselaw are directed at those other devices," including Sections 631 and 632. *Price*, 2025 WL 1237977, at *3. Moreover, the *Meta* court turned to the 1967 legislative history for clarification. *Meta*, 793 F. Supp. 3d at 1153. But Sections 638.50 and 638.51 were enacted in 2015 for the limited purpose of ensuring law enforcement could use pen registers without violating federal statute. *See* Mot. at 18 (citing Assem. Bill. No. 929). And *In re Meta Tax Filing*'s construction of "pen register" *threatens* privacy by allowing law enforcement to bypass the numerous requirements of a wiretap application, *see* Cal. Pen. Code § 629.50 (requiring agency review, district attorney attestation, and judicial approval only based on probable cause), and simply wiretap through a pen register order, which is available without any of a wiretap's rigorous protections. *See id.*



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

§ 638.53(a) (any peace officer can apply for a pen register without sign off from the district attorney or agency review, and a judge must issue the order). Finally, as a criminal statute, Section 638.51 must be read to "give[] the benefit of every reasonable doubt" to the defendant. *In re Zerbe*, 60 Cal. 2d 666, 668 (1964).

**3. Plaintiff Lacks Statutory Standing.**

Plaintiff fails to allege that he suffered an injury through a violation of Section 638.51, as required by Section 637.2. Mot. at 20. In opposition, Plaintiff conflates injury with damages, contending that Section 637.2 does not require the plaintiff to suffer damages. Opp. at 19. Be that as it may, Section 637.2 on its face only gives rise to a cause of action to a person "who has been *injured* by a violation of this chapter." Cal. Pen. Code § 637.2(a) (emphasis added). Here, Plaintiff cannot allege statutory standing because he cannot show *any* injury caused by the Klaviyo tools operating *as a pen register*. Mot. at 20. Pen registers *only* capture routing information, and the Opposition fails to explain how any routing information, which Plaintiff has to disclose to access any website, could cause him any privacy harm. *See Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 865 (N.D. Cal. 2025) ("no privacy interest" in IP address).

**D. Plaintiff's ECPA Claim Fails.**

Plaintiff agrees that ECPA and CIPA define "contents" the same way, Opp. at 20, so the ECPA claim also fails for lack of contents of communications. *See supra* § III.A.2.

Plaintiff does not dispute Timex was a party to any communication on its website, *see* Mot. at 21–22, so he relies on the crime-tort exception to allege his ECPA claim. Opp. at 20. His sole, conclusory allegation that Timex "intentionally intercepted … communications for the purposes of committing a[n] invasion of privacy," Compl. ¶ 130, does not invoke the exception.

***Separate Act.*** First, Plaintiff concedes that a "criminal or tortious purpose must be *separate and independent from the act of the recording*." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (emphasis added). Plaintiff argues that the separate "purpose" here is Timex's alleged "disclosure" of information to Klaviyo, Opp. at 20, but his allegations describe Klaviyo's interception *as* the "disclosure." Compl. ¶¶ 83–87 (alleging the same acts for both disclosure and interception). Plaintiff does not allege Timex (or



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Klaviyo) disclosed any data to *another* third party. *See supra* § III.A.1. And he ignores *Kaiser*, which explained "that the act of interception itself cannot be the crime or the tort." *Kaiser*, 2024 WL 1589982, at *10 (interception of health information *was* alleged disclosure).

Plaintiff's cited authority does not help him. In *Marden v. LMND Medical Group, Inc.*, the court cited *Brown* which found a tortious intent where the defendant intercepted communications "for the purpose of associating their data with preexisting user profiles," allegedly contrary to state law. 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024). Here, in contrast, Plaintiff does not allege that *Timex* collected any information to do such association. *See* Compl. ¶ 75 (alleging that *Klaviyo* can associate information collected). As this Court has recognized, Plaintiff's cited cases, *see* Opp. at 20–22, miss that the third party is alleged to do the "intercepting," so the same act is both the interception and the disclosure. *Kaiser*, 2024 WL 1589982, at *10 ("[v]iolation of HIPAA was not the purpose of the alleged interception"). Plaintiff alleges *Klaviyo* intercepted the communications, which interception is the same act by which he believes Timex disclosed the communications to Klaviyo. *See* Compl. ¶¶ 83–87.

***Primary Motivation.*** Second, Plaintiff alleges Timex used Klaviyo to collect data not to commit a crime or tort, but rather to "enhance user experience and to analyze performance and traffic" and to "run advertisements using its services." Compl. ¶¶ 16 & Fig. 1, 75. This means Timex's primary motivation for using Klaviyo was not criminal or tortious. *See* Mot. at 22–23; *Kaiser*, 2024 WL 1589982, at *10 ("collection of information itself was not for the purpose of committing a crime or tort"). Plaintiff cites cases ruling that a "monetary purpose" does not bar the crime-tort exception, Opp. at 22, reasoning that "committing a tort and seeking a profit are not mutually exclusive." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025). This reasoning is inapplicable where Plaintiff has pleaded an *exclusively* non-tortious purpose on Timex's part—to run ads. Nothing in the Complaint suggests Timex *wanted* to violate any user's privacy. Even *In re Meta Pixel* acknowledged that "[m]ultiple courts in this district have found the crime-tort exception … inapplicable where the defendant's primary motivation was to make money." 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022).



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**E. Plaintiff Does Not Allege Invasion of Privacy.**

Plaintiff fails to clear the "high" bar for alleging a "highly offensive" intrusion. *Ortiz*, 2026 WL 1430720, at *3; *see* Mot. at 23–24; *supra* § III.A.1.

*First*, as in *Ortiz*, Plaintiff "does not make any allegations as to the actions [he] actually took on the website," so he does not allege any data was sufficiently sensitive to meet the "highly offensive" prong. 2026 WL 1430720, at *3; *see Kaiser*, 2024 WL 1589982, at *19. Plaintiff does not respond to this argument.

*Second*, even the information Klaviyo allegedly can *in general* collect is not sufficiently sensitive to support a highly offensive intrusion. *See* Mot. at 24; *supra* § III.B.2. Plaintiff cannot distinguish *Popa v. Microsoft Corp.*'s holding that tracking "mouse movements, clicks, keystrokes … [and] URLs of web pages visited" on a public, commercial webpage—exactly what Plaintiff alleges—is not "remotely similar" to a highly offensive intrusion. 153 F.4th 784, 790–91 (9th Cir. 2025). And Plaintiff's cited cases, *see* Opp. at 23, involved "highly sensitive browsing activity" across multiple websites. *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 865 (N.D. Cal. 2026); *see Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026) (data "related to personal topics like nutrition and fitness tracking").

*Third*, the alleged cookie banner malfunction does not make any intrusion "highly offensive" because the data is simply not sensitive enough. *See* Mot. at 24. Plaintiff attempts to distinguish *Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026), by arguing that the court did not rule on the invasion of privacy claim, Opp. at 24, but this is disingenuous. *Garcia*'s Article III analysis—like in *Popa*—hinged on whether the plaintiff "suffer[ed] an injury that is analogous to … intrusion upon seclusion." 2026 WL 925028, at *4.

*Finally*, Plaintiff cites *In re Google Location Hist. Lit.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021), to argue that offensiveness is a fact question. This Court has considered and rejected that argument in circumstances indistinguishable from these. *Ortiz*, 2026 WL 1430720, at *4.

## IV. CONCLUSION

For the above reasons, the Court should transfer or dismiss the Complaint with prejudice.



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Dated: June 8, 2026

DAVIS WRIGHT TREMAINE LLP

By: /s/ James H. Moon
James H. Moon

*Attorneys for Defendant Timex.com, Inc.*



**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899