**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710 F
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TREVOR LUTGE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TIMEX.COM, INC.,<br><br>Defendant. | Case No. 3:26-cv-00960-EMC<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEFING IN RESPONSE TO ECF NO. 37**<br><br>Judge: Hon. Edward M. Chen |

**TABLE OF CONTENTS**

**PAGE(S)**

I. PLAINTIFF HAS ALLEGED ARTICLE III STANDING .................................................. 1

II. *POPA* AND *TORRES* DO NOT COMPEL A DIFFERENT RESULT ................................ 3

III. CONCLUSION ..................................................................................................... 6

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Brayfield v. Advanced Hair Restoration LLC*,
2026 WL 2138552 (C.D. Cal. July 24, 2026) ........ 3

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 3

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025) ........ 4

*Correia v. Lulu & Georgia, Inc.*,
2026 WL 2343093 (S.D. Cal. Aug. 12, 2026) ........ 2, 4

*Deivaprakash v. Conde Nast Digit.*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) ........ 5

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 1

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ........ 3, 4

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ........ 3, 5

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ........ 4

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 1, 3, 4

*J.S. v. Spring Fertility Holdings, LLC*,
2026 WL 1483490 (N.D. Cal. May 27, 2026) ........ 1, 2, 5

*Krzyzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) ........ 1

*Pemberton v. Rest. Brands Int'l, Inc.*,
2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) ........ 3

*Petris v. Sportsman's Warehouse, Inc.*,
736 F. Supp. 3d 260 (W.D. Pa. June 3, 2024) ........ 1

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 1, 3, 4

*Shah v. MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026) ..... 3, 4

*Shah v. Politico LLC*,
2026 WL 323269 (N.D. Cal. Feb. 6, 2026) ..... 3

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..... 1

*Torres v. Seatgeek, Inc.*,
2026 WL 1495202 (N.D. Cal. May 28, 2026) ..... 3, 4

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..... 1

Plaintiff Trevor Lutge ("Plaintiff") respectfully submits this Supplemental Brief on Article III Standing pursuant to this Court's August 13, 2026, Order. (ECF No. 37).

## I. PLAINTIFF HAS ALLEGED ARTICLE III STANDING

To establish a concrete and particularized injury, the injury suffered must be one traditionally recognized by American courts. *Petris v. Sportsman's Warehouse, Inc.*, 736 F. Supp. 3d 260, 270–71 (W.D. Pa. June 3, 2024) ("The focus of the analysis for Article III purposes is the harm, not the cause of action or remedy. . . . It is not necessary . . . for a plaintiff asserting such a claim to plead or establish the elements of a traditional cause of action, but rather, only that an analogous harm exists"). As the Supreme Court has recognized, "disclosure of private information[] and intrusion upon seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). In determining "whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Specifically, the Supreme Court has instructed courts to identify if an alleged injury bears "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025) (citing *TransUnion*, 594 U.S. at 424) (cleaned up). The Ninth Circuit is in accord, acknowledging that, "[v]iolations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) ("Historical practice confirms that . . . [v]iolations of the right to privacy have long been actionable at common law"). This "right to privacy" includes an "individual's control of information concerning his or her person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598; *see also Krzyzek v. OpenX Techs., Inc.*, 2026 WL 206855, at *2–4 (N.D. Cal. Jan. 27, 2026) (same).

*J.S. v. Spring Fertility* is instructive. There, Judge Davila explained the plaintiff "had a reasonable expectation in *anonymized* data sharing." *J.S. v. Spring Fertility Holdings, LLC*, 2026 WL 1483490, at *2 (N.D. Cal. May 27, 2026). This expectation arose from the defendant's cookie policy, which represented "targeting cookies 'do not store directly personal information[.]'" Judge

Davila reasoned "if users were . . . told that all the information shared would be anonymized, then that could lead to a reasonable expectation that their personally identifying data would not be shared." *Id.*

In the present action, Plaintiff alleges parallel facts. *See* Complaint ("Compl."), ECF No. 1 at ¶ 16 (Defendant "promises customers that it will keep their personally identifiable electronic communications confidential" and "purports to offer consumers an opportunity to reject tracking"); ¶ 18 (Defendant "explicitly warrants the tracking technologies it installed on the Website do not store its customers' personal information," including that Strictly Necessary Cookies "do not store any personally identifiable information," that information collected by Performance Cookies "is aggregated and therefore anonymous," and that Targeting Cookies "do not store directly personal information"); ¶ 19 (the Tracking Technologies at issue "commonly fall under the category of Targeting/Targeted Advertising Cookies"); ¶ 20 ("Despite Defendant's claims it does not share directly personal information . . . Defendant enables third parties—including Klaviyo—to . . . track consumers' . . . Website browsing activities and eavesdrop on users' private communications"); Fig. 3. Accordingly, Plaintiff and members of the putative class had a reasonable expectation of privacy in "anonymized tracking" based on Defendant's own representations because Defendant made this representation "***irrespective of whether a consumer accept[ed] or reject[ed] cookies.***" Compl. ¶ 20; *Spring Fertility*, 2026 WL 1483490, at *2.

Defendant's failure to adequately disclose third-party tracking, therefore (1) deprived Plaintiff of his ability to control information regarding his person by expressly warranting any tracking was anonymous, (2) constitutes a disclosure of private information sufficient to confer standing, and (3) constitutes "common law public-disclosure-of-private-facts tort." Compl. ¶¶ 14–23. A number of courts throughout this circuit are in accord. *Correia v. Lulu & Georgia, Inc.*, 2026 WL 2343093, at *4 (S.D. Cal. Aug. 12, 2026) ("while the browsing data at issue 'may not involve the types of information in which users have an unqualified expectation of privacy,' Defendant affirmatively informed users they could decline or opt out of that form of information collection . . . This affirmative action . . . creates 'a reasonable expectation of privacy with respect to that

information.'"); *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) ("The Restatement (Second) of Torts (which *Popa* cited approvingly, see 153 F.4th at 791) explains that misrepresenting how private information will be used can constitute such an invasion of privacy"); *Shah v. Politico LLC*, 2026 WL 323269, at *4 (N.D. Cal. Feb. 6, 2026) ("because a misrepresentation about how information would be used and the non-consensual sharing of personal information could give rise to injuries that were actionable invasions of privacy at common law, plaintiffs have sufficiently pleaded an injury-in-fact for the purposes of Article III."); *Pemberton v. Rest. Brands Int'l, Inc.*, 2025 WL 3268404, at *4 (N.D. Cal. Nov. 24, 2025) ("Defendants allowed 'Third Parties to track and collect [his] Private Communications,' including his browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data, which are categories of information in which Plaintiff has a protectable privacy interest.'" (citing *Facebook Internet Tracking*, 956 F.3d at 598–99 (finding protectable privacy interest in browsing history); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 925 (N.D. Cal. 2023) (finding standing for collection of browsing data)); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) ("Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *Brayfield v. Advanced Hair Restoration LLC*, 2026 WL 2138552, at *3 (C.D. Cal. July 24, 2026); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 865 (N.D. Cal. 2025) (same).

## II. *POPA* AND *TORRES* DO NOT COMPEL A DIFFERENT RESULT

This Court's August 13, 2026, Order specifically requested the Parties address *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) and *Torres v. Seatgeek, Inc.*, 2026 WL 1495202 (N.D. Cal. May 28, 2026). As discussed herein, neither case compels a different result.

As a preliminary matter, *Popa* did not displace *Eichenberger* and *In re Facebook*, rather, the Ninth Circuit emphasized the "the individual circumstances giving rise to the plaintiffs' alleged injuries." *Popa*, 153 F.4th 784, 794. *Popa* is factually distinct from this matter, as it relates to

"session-replay technology" akin to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales" only used by the Website operator—not a third party. *Id*. at 788–91. Simply put, in *Popa*, the Ninth Circuit's reasoning turned on the plaintiffs' failure to identify "embarrassing, invasive, or otherwise private information." *Id.* at 791. By way of contrast, here, Defendant's own representations created a reasonable expectation of privacy in anonymized tracking—which it blatantly ignored. *See* Section I; Compl. ¶¶ 3–5, 6–7, 14–23, 77–87; *accord Correia*, 2026 WL 2343093, at *4 ("[The defendant's] affirmative action distinguishes itself from *Popa* and creates 'a reasonable expectation of privacy with respect to that information.'"); *MyFitnessPal, Inc.*, 824 F. Supp. 3d at 914 ("Unlike the plaintiff in *Popa*, the kind of injury that [the plaintiffs] allegedly suffered is similar to . . . common law public-disclosure-of-private-facts tort."); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d at 867 (distinguishing *Popa* because "the session-replay technology was not alleged to track anything beyond her interactions with the website she chose to visit, and the information gathered was only alleged to be used by the owner of that website" whereas in *Haleon*, the plaintiff alleged "third parties 'analyze and aggregate this user data . . . for their own purposes and financial gain'").

*Torres* is similarly inapposite. In *Torres*, the court highlighted that the "IP addresses, device make/model/OS, browser type, and cookie identifiers [was] record information where there is no reasonable expectation of privacy." *Torres*, 2026 WL 1495202, at *4. The *Torres* court explained the "record information" collected by SeatGeek fell short of the broad capture of information held actionable by other courts in the Ninth Circuit. *Compare Torres*, 2026 WL 1495202, at *4; *with* I*n re Facebook*, 956 F.3d at 598–99 ("As alleged, Facebook's tracking practices allow it to amass a great degree of personalized information. Facebook's user profiles would allegedly reveal an individual's likes, dislikes, interests, and habits over a significant amount of time . . . ."); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025) (standing where "trackers on Defendant's website collected a broad set of [the plaintiffs'] personal identifying and addressing information" (cleaned up)); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (standing where defendant intercepted "information regarding users' activity on websites

and communications with websites in the form of full-string URLs and button click events"); *Deivaprakash v. Conde Nast Digit.*, 798 F. Supp. 3d 1100, 1106–07 (N.D. Cal. 2025) (third parties generated "profiles that reflect users' geographic locations, incomes, and preferences, among other characteristics"); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) (third parties compiled the plaintiff's "Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data").

Here, Plaintiff's claims are more akin to those *Torres* distinguishes, as Defendant discloses more than mere anonymous record information. For example, the Complaint alleges Defendant intercepted and disclosed to Klaviyo "plain-text email (i.e., PII), browser details, operating system, and purchase details" (Compl. ¶ 87), as well as content information on the form of detailed URLs, "total price, SKU, vendor, the presentment price, the URL of the item page, whether it is a variant design, the product type, title and description of the item" (Compl. ¶ 85). Compl. ¶ 82 ("Defendant intentionally configured the Tracking Technologies installed on its Website to capture both the "characteristics" of individual's communications with its Website (their IP addresses, cookie identifiers, device identifiers, emails, and phone numbers) and the "content" of these communications (the buttons, links, pages, and tabs they click, and view related to the shopping and products sought from Defendant); *see also* Compl. ¶¶ 77–93; Figs. 8–11. Moreover, Defendant discloses such information to Klaviyo even though Klaviyo uses it for its own purposes including the creation of detailed consumer profiles (Compl. ¶¶ 67–70; Figs. 5–7) which it uses to market itself to companies (Compl. ¶ 72–74). Klaviyo "uses identifiers and online activity for its own commercial purposes . . . [such as] leverage[ing] personal information to enhance its platform. Klaviyo claims, for example, that it's AI 'is trained on your brand, website, catalog, and profiles.'" Compl. ¶ 74. Perhaps most egregiously, is that Defendant does this despite creating a reasonable expectation of anonymized tracking in Plaintiff and consumers. *Spring Fertility Holdings, LLC*, 2026 WL 1483490, at *2.

## III. CONCLUSION

For the foregoing reasons, *Popa* and *Torres* are distinguishable and Plaintiff's allegations are sufficient to confer Article III standing.

Dated: August 20, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Philip L. Fraietta</u>*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*