UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVOR LUTGE,<br>Plaintiff,<br>v.<br>TIMEX.COM, INC.,<br>Defendant. | Case No. 26-cv-00960-EMC<br><br>**ORDER DISMISSING CASE**<br><br>Docket No. 21 |

Plaintiff Trevor Lutge, individually and on behalf of a putative class, brings this action against Timex.com, Inc. ("Timex"), alleging that Timex violated the Electronic Communications Privacy Act, the California Invasion of Privacy Act, and the California Constitution by allowing without consent tracking by a third party Klaviyo of website consumers and their data. Timex moves to transfer the case to the District of Connecticut under 28 U.S.C. § 1404(a), or, in the alternative, to dismiss on all counts for failure to state a claim for relief. Timex does not raise standing as a ground for dismissal. However, the Court raises the issue of standing sua sponte under its independent duty to assess jurisdiction. *See Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (federal courts have "an independent duty to assure that standing exists, irrespective of whether the parties challenge it"). Because Plaintiff fails to adequately allege facts that would establish Article III standing, the Court grants Timex's motion to dismiss without prejudice.

## I. <u>FACTUAL BACKGROUND</u>

Plaintiff Trevor Lutge is a resident of California. Defendant Timex is a Delaware corporation with a principal place of business in Shelton, Connecticut. Dkt. No. 1 ¶¶ 7, 8

United States District Court
Northern District of California

United States District Court
Northern District of California

("Compl."). Timex operates www.timex.com (the "Website") as an online marketplace through which consumers can browse and purchase timepieces. Compl. ¶¶ 1, 2.

Visitors to Timex's website are presented with a cookie banner offering the choice of "Accept Cookies" or "Do Not Sell My Personal Information." *Id.* ¶ 3, Fig. 1. These cookies include "Performance Cookies" that track site traffic and how visitors "move around the site" and "Targeting Cookies" set by advertising partners that may be used to "build a profile" of the visitor. *Id.* Fig. 3.

Plaintiff alleges that Timex uses a third-party company, Klaviyo, to collect information about its website visitors through cookies and embedded code. Compl. ¶¶ 58–60, 62, 66, 72. Klaviyo collects three main types of data: "Event data," which includes events such as "Active on Site, Placed Order, or Fulfilled Order"; "Profile data," which includes "attributes such as First Active, Last Active, Source, First Name, and Last Name"; and "Catalog data," which "describes items found within [Timex's] product catalog," *e.g.*, the various products that Timex sells. *Id.* ¶ 63. Klaviyo also collects text that consumers enter into website forms. *Id.* ¶ 69.

Klaviyo builds consumer profiles that include information such as a consumer's purchase activity, web activity, names, email addresses, phone numbers, and other identifiers. *Id.* ¶¶ 68, 69. Klaviyo calls this process of collecting consumer data and compiling it into one profile "identity resolution." *Id.* ¶ 70. Klaviyo uses a feature called "anonymous visitor activity backfill" to correlate an identified consumer with a previously anonymous consumer. *Id.* ¶ 71. By doing so, Klaviyo may build a profile of the consumer, once identified, using actions taken across various sources and devices beyond the Timex website. *Id.* ¶ 65.

Timex represents in its cookie banner that consumers may opt out of the Targeting and Performance cookies, and that if a consumer opts out of cookies, then Timex will "not hand over your personal information to any third parties." *Id* ¶ 18, Fig. 3.

On or around February 13, 2025, Plaintiff visited the Timex website and rejected cookie tracking. During his visit, he purchased a watch. *Id.* ¶ 7. Plaintiff alleges that despite his opt-out, his interactions with the Timex website, containing information about his purchase and his email address, were intercepted by Timex without his consent and disclosed to third parties, including

Klaviyo. *Id.* ¶ 7, 75. Plaintiff asserts that Timex's collection and disclosure of this information violates the Electronic Communications Privacy Act, the California Invasion of Privacy Act, and the California Constitution. *Id.* ¶ 5.

## II. DISCUSSION

Standing to assert privacy violations, even those afforded statutory protection, must be based on actual injury. "[E]ven in the context of a statutory violation," Article III standing requires that a plaintiff's privacy injury be "concrete" and "actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). For intangible alleged injuries arising out of alleged privacy violations, courts ask "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). At base, "*TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). The analysis must be "particularized to a plaintiff's circumstances and benchmarked to a specific tort." *Id.*

*Popa* concerned session-replay technology that allowed a business to capture and reproduce customers' interactions with its website, including the customer's clicks, mouse movements, keystrokes, webpages visited, and other electronic communications. *Id.* at 786. The plaintiff encountered the session-replay technology on a pet supply website. During her visit to the website, she browsed for pet supplies and clicked on certain products, information that she alleged was captured by the session-replay technology in violation of Pennsylvania's wiretapping act. *Id.* at 787.

The Ninth Circuit concluded that on these facts, Popa had not met her burden to demonstrate standing. The court rejected the plaintiff's analogies to common law privacy torts of intrusion upon seclusion and public disclosure of private facts because both torts required that the intrusion be "highly offensive to a reasonable [person,]" but Popa did not identify any "embarrassing, invasive, or otherwise private information" collected by the defendant. *Id.* at 791. The court observed that "the monitoring of Popa's interactions with [the pet supply] website

seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.* The defendant's conduct and the information allegedly collected simply fell outside the "sensitive sphere" contemplated by traditional common law privacy torts. *Id.*

Here, Plaintiff alleges that he visited an online watch store and purchased a watch, and that his interactions with the store were monitored via cookies, despite his opt-out. While Klaviyo's alleged "identity resolution" technology appears to be more extensive than the single-site session-replay technology in *Popa*,[1] the information gathered on Timex's site itself is no more private or invasive than the information at issue in *Popa.* The alleged conduct does not intrude upon any particularly sensitive sphere of Plaintiff's personal affairs. The information disclosed while purchasing a watch is not sufficiently confidential nor invasive to constitute a "highly offensive" intrusion on which Article III standing may be based.

It is true that courts in this Circuit have held that the collection and disclosure of information can create an injury sufficient to establish Article III standing in some circumstances, but those cases involved either more inherently sensitive information, like medical data, immigration status, or sociopolitical views, or tracking extensive enough to create "cradle-to-grave" profiles. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020). In *Shah v. MyFitnessPal, Inc*., 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026), for example, this Court held that there was Article III standing where the defendant, a nutrition and fitness app, placed third-party tracking cookies despite telling users that they could opt out of these cookies. The Court distinguished *Popa* on multiple grounds, including that the defendant had misrepresented how the information would be used and that the information collected related to personal topics like nutrition and fitness tracking. *Id.*

*Shah* is distinguishable. The health information collected in *Shah* was private and the

[1] Klaviyo allegedly uses identifiers, including a user's email address, along with IP addresses, device metadata, browser fingerprinting, and server-side matching to de-anonymize and identify users even after they delete cookies, link their activity on the Timex site to profiles compiled across sessions, devices, and websites, and sell the resulting information to advertisers. Compl. ¶¶ 64–71, 86–92, 167–68.

personal health nature of the information potentially sensitive; this, in combination with the defendant's misrepresentation, rendered the allegations plausibly highly offensive and was sufficient to constitute a concrete injury. *Cf. J.S. v. Spring Fertility Holdings, LLC*, 2026 WL 1483490, at *8 (N.D. Cal. May 27, 2026) (information disclosed on a fertility-care website, including detailed patient and partner information and "the specific type of fertility treatment sought," was sensitive medical information); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 867 (N.D. Cal. 2025) (information collected on healthcare websites is likely to be "more sensitive" user information than a pet-food website); *In re Blue Shield of California Priv. Litig.*, 2026 WL 2040561, at *4 (N.D. Cal. July 10, 2026) ("personal health information" was sensitive such that its collection and disclosure would be "highly offensive"); *cf. Torres v. SeatGeek, Inc.*, 2026 WL 1495202, at *4 (N.D. Cal. May 21, 2026) (IP addresses, browser information, and cookie identifiers without "private information" were not sensitive information).

It is true that similar to *Shah*, Timex's allegedly misrepresented to Plaintiff that he had successfully rejected cookie tracking. The use of deceit can be a "'plus' factor" elevating otherwise borderline conduct to a highly offensive intrusion. *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) (quoting *Heeger v. Facebook, Inc.*, 2019 WL 7282477 (N.D. Cal. Dec. 27, 2019). However, deceit alone does not convert every instance of routine information collection into a "highly offensive" invasion. *See Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *4 (N.D. Cal. May 21, 2026). "[W]here a company tracks limited information on its own website and discloses it to third parties, courts in this district have found that the intrusion does not meet the 'high bar' to be highly offensive," even where the collection was contrary to an explicit promise. *Id.* (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012)); *see also Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026) (holding that a misrepresentation regarding tracking may establish an expectation of privacy but does not, by itself, make the intrusion "highly offensive"). The key is the sensitivity of the information collected.

The recent decision in *Blalock v. FCA US, LLC, et al.*, 2026 WL 2364789 (C.D. Cal. Aug. 14, 2026) is instructive. Plaintiff Blalock alleged that defendant FCA, owner of

https://www.chrysler.com, embedded tracking software from a third-party data broker, LiveRamp, onto the website to collect and transmit browsing and device information. *Blalock*, 2026 WL 2364789, at *1. LiveRamp allegedly then matched the collected information to preexisting profiles in its database by combining it with other user data; if no profile existed, LiveRamp allegedly created one as "a starting point" for further cross-site information gathering. *Id*. While the court found LiveRamp's tracking methods to be more extensive than those at issue in *Popa*, it nonetheless held that the plaintiff lacked Article III standing. *Id.* at 4–5. The court reasoned that the plaintiff did not allege that FCA provided the information necessary for LiveRamp to identify her, the information collected was not inherently sensitive, and any alleged de-anonymization was not sufficiently traceable to FCA. *Id.*

The information collected here was not more sensitive than that in *Blalock*. Plaintiff's name, email address, and watch-browsing and purchase activity, are not sufficiently private or sensitive to constitute an intrusion upon seclusion. To be sure, unlike *Blalock*, Plaintiff does allege that Timex itself provided the information necessary to identify Plaintiff to the third-party company, Compl. ¶¶ 82, 86, 92, 168. Klaviyo's ability to de-anonymize the information provided by Timex may have differed slightly from that of the third party in *Blalock*, but not sufficiently so to make a material difference to the intrusiveness analysis given the non-sensitive nature of the information collected.

While the Complaint alleges that Klaviyo may use information from Timex and other websites to create more comprehensive user profiles, Plaintiff does not allege that Klaviyo aggregates information (from Timex or other websites) that is comprehensive or invasive enough to constitute something akin or approaching a "cradle-to-grave" profile. *Cf. In re Facebook*, 956 F.3d at 598–99 (holding that standing existed where Facebook tracked users beyond its own platform and linked users' browsing histories, "no matter how sensitive" or personal, to identifiable Facebook accounts to compile extensive profiles). While Plaintiff alleges that "[h]undreds of thousands of businesses . . . have embedded Klaviyo's tracking software into their e-commerce websites," Compl. ¶ 58, Plaintiff does not allege that Klaviyo has in fact been able to collect and deanonymize information from other websites that is materially more sensitive (even

in the aggregate) than what it collects from Timex. Plaintiff "cannot rely on 'potential harms that *might* be associated' with a defendant's software." *Farrell v. LinkedIn Corp.*, 2026 WL 2654727 (N.D. Cal. Sept. 8, 2026) (quoting *Popa*, 153 F. 4th at 791 n.5).

On the record before the Court, there is no Article III standing. Because there is no Article III standing, the Court does not reach the question of transfer or the merits and must dismiss for lack of jurisdiction.

For the foregoing reasons, the Court **dismisses** Plaintiff's complaint with leave to amend.

**IT IS SO ORDERED**.

Dated: September 14, 2026



EDWARD M. CHEN
United States District Judge